


1 | Jeffrey G. Randall (CA Bar No. 130811)
   | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2 | 525 University Avenue
   | Palo Alto, CA 94301
3 | (650) 470-4500

4 | Allan M. Soobert
   | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
5 | 1440 New York Avenue
   | Washington, DC 20005
6 | (202) 371-7000

7 | David Peyman (CA Bar No. 234268)
   | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
8 | 300 South Grand Avenue, Suite 3400
   | Los Angeles, CA 90071
9 | (213) 687-5000

10 | Attorneys for Defendants
    | eBay Inc. and Half.com, Inc.

11 |

12 |



13 |                IN THE UNITED STATES DISTRICT COURT

14 |                  SOUTHERN DISTRICT OF CALIFORNIA

15 |                                            '07CV 231 IEG



16 | MERCEXCHANGE, L.L.C.,            )  Miscellaneous Case No. _____
                                     )
17 |           Plaintiff,            )  (Case No. 2:01-CV-736 Pending in the United
                                     )  States District Court for the Eastern District of
18 |       v.                        )  Virginia)
                                     )
19 | eBAY INC. AND HALF.COM, INC.,   )  **DEFENDANTS EBAY INC.'S AND
                                     )  HALF.COM, INC.'S MEMORANDUM
20 |           Defendants.           )  IN SUPPORT OF THEIR MOTION TO
                                     )  COMPEL FISH & RICHARDSON P.C.
21 |                                 )  TO COMPLY WITH A SUBPOENA
                                     )  *DUCES TECUM***
22 |                                 )

23 |

24 | **I.    INTRODUCTION**

25 |      Pursuant to Federal Rule of Civil Procedure 45 ("rule 45"), defendants eBay Inc. and

26 | Half.com, Inc. (together, "eBay") hereby move to compel third party Fish & Richardson to comply

27 | with the subpoena *duces tecum* issued on January 12, 2007.  eBay further seeks expedited relief on

28 |

Dockets.Justia.com

1  this motion and an order compelling Fish & Richardson to produce all responsive documents on an

2  expedited basis in view of the brief discovery period permitted by the United States District Court

3  for the Eastern District of Virginia (the "EDVA Court").

4        More specifically, this case is on remand following a trial and appeals in the Court of

5  Appeals for the Federal Circuit and the United States Supreme Court, and the EDVA Court has

6  permitted the parties to take additional discovery—during a very limited time period—to update

7  the record.   In its order dated December 18, 2006, the EDVA Court permitted documentary

8  discovery requests to be served by January 12, 2007, with objections and responses due by

9  February 2, 2007. *See MercExchange, L.L.C. v. eBay Inc.*, 2006 U.S. Dist. LEXIS 91059 at *29-30

10  (E.D. Va. Dec. 18, 2006) (the "Discovery Order") (attached as Exh. 1 to Declaration of David

11  Peyman ("Peyman Decl.")).   Each party then may take up to five depositions to be concluded by

12  March 2, 2007. *Id.*  Pursuant to the Discovery Order, eBay served document requests on Fish &

13  Richardson on January 12, 2007, requesting production by January 24, 2007.   Peyman Decl.

14  Exh. 2.

15        To date, Fish & Richardson has neither produced nor agreed to produce a single document

16  in response to eBay's subpoena *duces tecum*.  In addition, eBay has been attempting to meet and

17  confer with Fish & Richardson to discuss its objections and failure to respond since January 26,

18  2007, but Fish & Richardson stalled until February 1—*after* receiving notice of this motion—

19  before agreeing to schedule a time to meet and confer.   Peyman Decl. Exh. 3.   As the close of

20  discovery looms, eBay respectfully asks this Court to put an end to Fish & Richardson's delay

21  tactics by ordering production of all non-privileged, responsive documents and a privilege log no

22  later than February 9, 2007.

23  **II.  BACKGROUND**

24        **A.    The Instant Case**

25        This case began in September 2001, when MercExchange sued eBay for infringement of

26  three of its patents, U.S. Patent 5,845,265 ("the '265 patent"), U.S. Patent 6,085,176 ("the '176

27  patent"), and U.S. Patent 6,202,051 ("the '051 patent"), in the EDVA Court.  Since then, the case

28

DEFENDANTS' MEM. SUPPORTING MTN TO COMPEL FISH &
RICHARDSON TO COMPLY WITH SUBPOENA *DUCES TECUM*
Case No. _____

1 has been tried and appealed all the way to the Supreme Court and is now back on remand to the

2 EDVA Court. Aspects of the proceedings relevant to the present motion are summarized below.

3   Following a jury verdict of infringement in May 2003,[1] the EDVA Court denied

4 MercExchange's request for a permanent injunction based on the traditional, four-factor test for

5 equitable relief. *MercExchange, L.L.C. v. eBay, Inc.*, 275 F. Supp. 2d 695, 715 (E.D. Va. 2003).

6 The Supreme Court ultimately reviewed the permanent injunction ruling, clarified the standard

7 governing the granting or denial of equitable relief in patent cases, and remanded the case for the

8 EDVA Court to reconsider the permanent injunction issue consistent with the clarified standard.

9 *eBay Inc. v. MercExchange, L.L.C.*, 126 S. Ct. 1837 (2006).

10   Concurrently with the appeals, in March 2004, eBay asked the United States Patent and

11 Trademark Office ("the Patent Office") to reexamine the validity of the '265, '176, and '051

12 patents. By June 2004, the Patent Office had granted eBay's reexamination requests, finding

13 substantial questions of patentability as to all three patents. Since that time, the Patent Office has

14 issued numerous rejections against these patents and has not confirmed the validity of any of them.

15   On remand, the EDVA Court has decided to address two issues before all others:   1)

16 whether to grant or once again deny MercExchange's renewed motion for a permanent injunction;

17 and 2) whether to grant or deny eBay's motion to stay the case pending the outcome of the

18 reexaminations. *MercExchange, L.L.C.*, 2006 U.S. Dist. LEXIS 91059 at *4 (Peyman Decl.

19 Exh. 1). During briefing, both parties submitted new evidence, which led the Eastern District of

20 Virginia to reopen discovery—for a limited time period as discussed above—so that both parties

21 could investigate recent factual developments relevant to the two motions. *Id.* at *29-30.

22   **B.    Specific Relevancy of Fish & Richardson's Evidence**

23   In the Discovery Order, the EDVA Court expressly permitted discovery relating to

24 developments subsequent to August 6, 2003, that are relevant to eBay's motion to stay pending

25

---

26 [1] Specifically, the jury found the '265 and '176 patents valid and infringed by eBay. Prior to trial, the EDVA Court had granted eBay's motion for summary judgment of invalidity as to the '051 patent. The

27 United States Court of Appeals for the Federal Circuit later held that the '176 patent was invalid as a matter of law and that a triable issue of fact exists as to the validity of the '051 patent. *MercExchange, L.L.C. v.*

28 *eBay, Inc.*, 401 F.3d 1323, 1335, 1337 (Fed. Cir. 2005).

DEFENDANTS' MEM. SUPPORTING MTN TO COMPEL FISH & RICHARDSON TO COMPLY WITH SUBPOENA *DUCES TECUM* Case No. _____

1  reexamination or to MercExchange's motion for injunction.  *Id.*  Here, therefore, the
2  reexaminations of the '051 and '265 patents (begun after August 6, 2003) and whether a stay is
3  appropriate in light of them are relevant and appropriate topics for discovery.  Fish & Richardson is
4  currently serving as MercExchange's patent prosecution counsel for the prosecution of the
5  reexaminations of the '051 and '265.  In addition, John Phillips—a partner at Fish & Richardson—
6  is a part owner in MercExchange and stands to benefit financially MercExchange's claims.  In
7  order for eBay to fully investigate the events surrounding the reexamination of the '051 and '265
8  patents and whether a stay is appropriate, eBay must be allowed discovery from Fish &
9  Richardson.

10         **C.      eBay's Document Requests**

11         Pursuant to the Discovery Order, eBay served document requests upon Fish & Richardson
12  on January 12, 2007 and requested that Fish & Richardson produce the relevant documents on
13  January 24, 2007.  Peyman Decl. Exh. 2.  To date, Fish & Richardson has not produced or agreed
14  to produce a single document in response to eBay's request for documents.  Instead, eBay received
15  a letter from Fish & Richardson (apparently representing itself) dated January 16, 2007, which
16  stated general objections to eBay's document requests and offered only to "review [its] files to
17  determine if [the firm has] any material responsive to the subpoena."  Peyman Decl. Exh. 4.  The
18  firm did not agree to produce responsive documents in response to any of the requests.

19         In response to the objections, eBay's counsel contacted Fish & Richardson on January 26,
20  2007, in order to conduct or at least schedule a meet-and-confer to discuss the firm's objections
21  and failure to respond to the subpoena.  Peyman Decl. Exh. 3.  After waiting 6 days in vain for a
22  response, and in view of the limited time to obtain and review documents for use in depositions
23  before March 2, 2007, eBay gave the Fish & Richardson notice of its intent to file the present
24  motion to compel.  Peyman Decl. Exh. 5.  Only then did Fish & Richardson respond to eBay's
25  request to meet and confer.  In view of the minimal time to ensure a full production before
26  depositions, eBay has no choice but to file its motion.

27

28
                                    4              DEFENDANTS' MEM. SUPPORTING MTN TO COMPEL FISH &
                                                   RICHARDSON TO COMPLY WITH SUBPOENA *DUCES TECUM*
                                                   Case No. _____

III. **LEGAL STANDARD**

"Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ." Fed. R. Civ. P. 26(b)(1). Further, under rule 45, parties may serve document requests upon third parties in order to obtain this relevant information. Fed. R. Civ. P. 45. Here, the Discovery Order specifically authorizes discovery of MercExchange relating to eBay's motion to stay pending reexamination, and Fish & Richardson is MercExchange's patent counsel for the reexaminations. In the event that the third party objects to this discovery, "the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production." Fed. R. Civ. P. 45(c)(2)(B).

In reviewing a motion to compel discovery, the reviewing court should determine "[i]f the documents sought by the subpoena are 'relevant and are sought for good cause.'" *Bariteau v. Krane*, 206 F.R.D. 129, 130 (W.D. Ky. 2001) (citation omitted) (Peyman Decl. Exh. 6). If they are, "then the subpoena should be enforced 'unless the documents are privileged or the subpoenas are unreasonable, oppressive, annoying, or embarrassing.'" *Bariteau*, 206 F.R.D. at 130. To this end, "a request for discovery would be considered relevant if there was 'any possibility' that the information sought may be relevant to the subject matter to the action." *Garrett v. Sprint PCS*, 2002 U.S. Dist. LEXIS 1914 at *3 (D. Kan. Jan. 31, 2002) (citations omitted) (Peyman Decl. Exh. 7); *see, e.g., Burlington N. & Santa Fe Ry. v. United States*, 408 F.3d 1142, 1149 (9th Cir. 2005) ("'The purpose of discovery is to provide a mechanism for making relevant information available to the litigants.'") (citation omitted). "Thus . . . a request for discovery should be allowed unless it is clear that the information sought can have no possible bearing on the claim or defense of any party." *Garrett*, 2002 U.S. Dist. LEXIS 1914 at *4) (Peyman Decl. Exh. 7)

IV. **ARGUMENT**

A. **eBay's Requests Are Proper, and Fish & Richardson's Objections Cannot Justify its Complete Failure to Comply with the Subpoena.**

eBay's requests properly seek relevant, admissible evidence relating to: Fish & Richardson's prosecution of the reexamination of the '051 and '265 patents (1-9); any expert's work relating to the reexamination since the end of the trial (requests 1-4 and 7); and any new

DEFENDANTS' MEM. SUPPORTING MTN TO COMPEL FISH & RICHARDSON TO COMPLY WITH SUBPOENA *DUCES TECUM*
Case No. _____

1    developments in the case since the end of trial (request 10). Peyman Decl. Exh. 2. All of those

2    topics fall squarely within the scope of discovery permitted by the Discovery Order. *See*

3    *MercExchange, L.L.C.*, 2006 U.S. Dist. LEXIS 91059 at *29-30 (Peyman Decl. Exh. 1).

4        In its objections dated January 16, 2007, Fish & Richardson recites a number of general and

5    specific objections in response to eBay's document requests. Peyman Decl. Exh. 4. Most of the

6    objections are boilerplate, without specificity and apparently calculated to delay production.

7    Indeed, considering the EDVA Court's authorization to take discovery concerning the

8    reexaminations and whether a stay is appropriate, no combination of objections can justify the

9    failure of Fish & Richardson—MercExchange's reexamination counsel—to produce a single

10    document or privilege log. Moreover, although Fish & Richardson's delay in responding to eBay's

11    meet-and-confer confer request eliminates any opportunity to evaluate whether any particular

12    objections are valid, many appear to be unjustified.

13        For example, Fish & Richardson objects that all of the requests are not reasonably

14    calculated to lead to the discovery of admissible evidence. As explained above, however, all of

15    eBay's requests seek discovery of admissible evidence that relates directly to whether the Eastern

16    District of Virginia will grant eBay a stay based on the reexamination of the '051 and '265 patents.

17    Moreover, Fish & Richardson has not articulated any specific, undue burden—nor can it. The bulk

18    of the firm's production likely will come from discrete and easily searchable client files it

19    maintains for MercExchange. Therefore, this objection should be afforded no weight. *See, e.g.,*

20    *Garrett v. Sprint PCS*, 2002 U.S. Dist. LEXIS 1914 at *3 (D. Kan. Jan. 31, 2002) (discovery is

21    granted if there is "'any possibility'" that the information sought may be relevant to the claim or

22    defense of any party.) Peyman Decl. Exh. 7.

23        Further, many of Fish & Richardson's objections might have been resolved in the meet and

24    confer that the firm refused to schedule with eBay's counsel until after receiving notice of this

25    motion. For example, the objections that the requests are overbroad could have been discussed and

26    perhaps resolved had Fish & Richardson agreed to do so in a timely manner. The same is true of

27

28

1    its objections to producing documents that have already been produced or are already in eBay's

2    possession.

3            Additionally, Fish & Richardson's objections to producing confidential documents is not a

4    proper basis to withhold documents—Fish & Richardson also represents MercExchange in the

5    prosecution of its reexamination patents and thus should have full knowledge of the protective

6    order available to protect confidential discovery in this matter. Peyman Decl. Exh. 8.

7            Fish & Richardson also objects to the requests on the basis of attorney-client privilege and

8    the work product doctrine. However, Fish & Richardson cannot possibly argue that this objection

9    applies to every relevant document in his possession, and regardless, it has failed to produce a

10    privilege log specifically documenting its claims of privilege.

11            Finally, Fish & Richardson also objects that service of the subpoena *duces tecum* was

12    insufficient. However, this objection is unfounded. As eBay demonstrated to Fish & Richardson

13    in its letter of January 26, 2007, service was indeed proper. Peyman Decl. Exh. 3.

14            In sum, the EDVA Court has granted eBay the opportunity to fully investigate Fish &

15    Richardson's involvement in the reexaminations and its post-trial work for MercExchange. To do

16    so, eBay must be able to obtain documents from Fish & Richardson in time to review them and use

17    them in its depositions, which must conclude by March 2, 2007. This Court should compel Fish &

18    Richardson's response to eBay's discovery requests, because Fish & Richardson's form objections

19    cannot justify the firm's failure to produce any documents.

20    **B.    Given the Brief Discovery Period, the Court Should Order Fish &**
        **Richardson to Produce His Documents on an Expedited Basis**
21

22            Fish & Richardson's failure to comply with eBay's subpoena has prejudiced eBay in its

23    efforts to prepare for depositions that must be completed within a month from now, and any

24    continued delay may make that prejudice irreversible. *See MercExchange, L.L.C.*, 2006 U.S. Dist.

25    LEXIS 91059 at *29-30 (Peyman Decl. Exh. 1). Given the shortened discovery period in this case,

26    eBay asked that Fish & Richardson produce his documents on January 24, 2007. Peyman Decl.

27    Exh. 2. Instead of making a diligent effort to produce documents that were not subject to a

28    legitimate objection, Fish & Richardson has not produced a single document. When eBay's

7

counsel offered to meet and confer about its objections, counsel for Fish & Richardson ignored the offer until after eBay noticed this motion to compel. By refusing to produce and then delaying any effort to meet and confer, Fish & Richardson has completely stalled eBay's discovery efforts.

eBay simply cannot wait any longer while counsel for Fish & Richardson delays its compliance with eBay's legitimate discovery requests. At this time, just a month remains in the limited discovery period set by the Eastern District of Virginia. If the Court does not expedite its decision on this issue, this motion will be moot, as the discovery period will have ended by the time briefing on this issue is final. Thus, eBay is concurrently filing a motion to shorten time for briefing and hearing on this motion.

## V.  CONCLUSION

For the foregoing reasons, eBay Inc. and Half.com, Inc. respectfully request that this Court compel Fish & Richardson to comply with the subpoena *duces tecum* and expedite its decision on this issue.

Dated: February 2, 2007                     Respectfully submitted,

David Peyman (CA Bar No. 234268)

Attorneys for Defendants
eBay Inc. and Half.com, Inc.

# EXHIBIT 1

LEXSEE 2006 U.S. DIST. LEXIS 91059

**MERCEXCHANGE, L.L.C., Plaintiff, v. eBAY, INC. and HALF.COM, INC., Defendants.**

**Civil Action No. 2:01cv736**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA, NORFOLK DIVISION**

*2006 U.S. Dist. LEXIS 91059*

**December 18, 2006, Decided**

**PRIOR HISTORY:** *MercExchange, L.L.C. v. eBay.com, 188 Fed. Appx. 993, 2006 U.S. App. LEXIS 17505 (Fed. Cir., 2006)*

**COUNSEL:** [*1] For Mercexchange, L.L.C., Plaintiff: Brian Mark Buroker, Emerson Vincent Briggs, III, Jennifer Ann Albert, Scott L. Robertson, LEAD ATTORNEYS, Hunton & Williams, Washington, DC; David Michael Young, Thomas J. Cawley, LEAD ATTORNEYS, Hunton & Williams, McLean, VA; Gregory N. Stillman, LEAD ATTORNEY, Hunton & Williams, Norfolk, VA; Kenneth Reed Mayo, LEAD ATTORNEY, Reed Mayo Law Firm PC, Virginia Beach, VA; Seth Paul Waxman, LEAD ATTORNEY, Wilmer Cutler Pickering Hale & Dorr LLP, Washington, DC; Thomas Jefferson Scott, Jr., LEAD ATTORNEY, Hunton & Williams LLP, Washington, DC.

For eBay, Inc., Defendant: Allan Madis Soobert, LEAD ATTORNEY, Skadden Arps Slate Meagher & Flom LLP, Washington, DC; Charles Patrick Ebertin, Jeffrey Scott Karr, Jeffrey Graham Randall, Matthew James Brigham, Michael Christopher Hendershot, LEAD ATTORNEYS, Cooley Godward LLP, Palo Alto, CA; Robert William McFarland, Steven R. Zahn, LEAD ATTORNEYS, McGuire Woods LLP, Norfolk, VA.

For Half.com, Inc., Defendant: Allan Madis Soobert, LEAD ATTORNEY, Skadden Arps Slate Meagher & Flom LLP, Washington, DC; Jeffrey Scott Karr, Jeffrey Graham Randall, Matthew James Brigham, Michael Christopher Hendershot, LEAD [*2] ATTORNEYS, Cooley Godward LLP, Palo Alto, CA; Robert William

McFarland, Steven R. Zahn, LEAD ATTORNEYS, McGuire Woods LLP, Norfolk, VA.

For Pierre Omidyar, Interested Party: Robert William McFarland, LEAD ATTORNEY, McGuireWoods LLP, Norfolk, VA.

**JUDGES:** Jerome B. Friedman, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Jerome B. Friedman

**OPINION:**

### ORDER AND OPINION

On November 17, 2006, the court conducted a hearing to address four motions filed by eBay, Inc. and Half.com, Inc. (collectively "eBay"): (1) "Motion to Strike New & Irrelevant Evidence"; (2) "Motion Strike Nahan Declaration"; (3) "Motion for Leave to Submit Motion to Enforce the Court's Protective Order"; and (4) "Motion to Enforce Court's Protective Order." For the reasons set out herein, the court **DENIES** both eBay's motion to strike new evidence and motion to strike the Nahan declaration; however, such ruling requires that both eBay and MercExchange be afforded the opportunity to perform limited discovery in order to update the record to the present time. Additionally, the court **GRANTS** eBay's motion for leave to submit the protective order motion and **GRANTS** in part, and **DENIES** in part, the substantive [*3] protective order motion.

### I. Factual and Procedural Background

2006 U.S. Dist. LEXIS 91059, *3

In an effort to avoid repeating a detailed depiction of the facts and procedural posture of the instant litigation, the limited background pertinent to the instant motions is as follows: subsequent to the grant of summary judgment in favor of eBay based on a finding of invalidity on the asserted claims of the '051 patent and a jury verdict awarding damages to MercExchange based on eBay's infringement of the '265 patent, on August 6, 2003, this court entered an order and opinion denying MercExchange's motion for an injunction. n1 *MercExchange, L.L.C. v. eBay, Inc., Inc., 275 F. Supp. 2d 695 (E.D. Va. 2003).* On appeal, the Federal Circuit vacated this court's grant of summary judgment on the '051 patent and reversed the denial of MercExchange's motion for a permanent injunction. *MercExchange, LLC v. eBay, Inc., 401 F.3d 1323 (Fed Cir. 2005).* The Supreme Court granted certiorari to address the proper standard for entry of a permanent injunction and ultimately vacated the Federal Circuit's injunction ruling, defining the traditional four-part equitable test as the proper standard for the [*4] injunction calculus in patent cases. *eBay Inc. v. MercExchange, L.L.C., 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006).*

n1 In short, the '051 patent covers auction style transactions where prospective buyers bid on an item whereas the '265 patent covers fixed price transactions such as eBay's "buy-it-now" sales option where the seller sets a fixed purchase price.

This matter has now been remanded to this court for consideration of MercExchange's renewed motion for a permanent injunction, as well as for an eventual trial on the '051 patent. The two primary motions presently under consideration by the court are: (1) MercExchange's renewed motion for a permanent injunction; and (2) eBay's motion to stay the proceedings in light of the Patent and Trademark Office (PTO) reexamination of both the '265 and '051 patents. The four motions that are addressed in this order are secondary motions that are relevant to this court's consideration of the motion for an injunction and motion to stay. Because the court previously denied [*5] MercExchange's motion for an injunction in an order dated August 6, 2003, the court's references to "new" evidence or "recent" developments refer to occurrences subsequent to this court's August 6, 2003, ruling, whereas references to "backfilled" evidence refer to facts that existed as of August 6, 2003, yet were not made part of the record.

## II. eBay's Motion to Strike New and Irrelevant Evidence

eBay's motion to strike was filed in response to numerous exhibits, including expert declarations, filed by MercExchange in support of its renewed motion for a permanent injunction. n2 Although eBay conceded at the hearing on this matter that injunctive relief's prospective nature requires the court to consider present circumstances in determining whether or not to grant an injunction, eBay contends that MercExchange has improperly submitted numerous exhibits seeking to backfill the record and re-litigate issues already decided by this court. Furthermore, eBay challenges the fact that two of the expert declarations submitted as exhibits to MercExchange's motion were submitted by previously undisclosed experts. As to the portions of MercExchange's exhibits that relate to recent [*6] factual developments, consisting primarily of MercExchange's business relationship with uBid, Inc. (uBid), eBay contends that such evidence is duplicative and irrelevant.

n2 It should be noted from the outset that eBay has also filed voluminous exhibits in support of its motion to stay.

In contrast, MercExchange contends that it is not trying to backfill the record, but rather, the portions of the exhibits discussing prior events are merely included to present a factual background that is relevant to this court's decision as to whether or not to enter an injunction. With respect to the previously undisclosed experts, MercExchange argues that the legal standard applicable to the court's injunction decision has been called into question by eBay and that such declarations were submitted to clarify the irreparable harm that MercExchange will suffer in case the court concludes that a presumption of irreparable harm no longer exists. Finally, as to uBid, MercExchange argues that such evidence is both relevant and significantly [*7] different from evidence previously advanced, and thus, is not duplicative.

Although the parties disagree on virtually every factual and legal issue relevant to the instant matter, they agree that the decision as to whether to "reopen the record" on remand lies squarely within this court's

discretion. See *United States v. Virginia, 88 F.R.D. 656, 662 (E.D. Va. 1980)* (recognizing that it is "well-established that, in the absence of error affecting the introduction of evidence at trial, the decision whether to reopen the evidence at a later stage of the proceedings rests with the trial judge"). Although the court's exercise of such discretion is dependant upon a careful case-by-case analysis, the type of relief sought on remand unquestionably has a significant impact on the court's decision as prospective equitable relief, such as an injunction or a stay of the proceedings, necessitates that the court consider the facts as they exist at the time of remand and not as they existed several years in the past. See *Lyons Partnership, L.P. v. Morris Costumes, Inc., 243 F.3d 789, 799 (4th Cir. 2001)* ("A prospective injunction is entered only on the basis [*8] of current, ongoing conduct that threatens future harm.") (emphasis added). The current facts are so vital to the court's decision when such form of relief is sought as the court is not only charged with determining the equitable relief appropriate on the date of the court's order, but is also expected to fashion relief that appears appropriate for extension into the future; such task can hardly be faithfully completed in reliance on a record that is nearly three and half years old and established prior to a significant factual development. See *Continental Airlines, Inc. v. United Airlines, Inc., 277 F.3d 499, 503 (4th Cir. 2002)* (remanding for reconsideration of an injunction involving airport security screening equipment and recognizing that, "on remand, the district court and the parties will undoubtedly have to deal with [the ramifications of September 11th] in considering any prospective relief"); see also *Direx Israel, Ltd. v. Breakthrough Medical Corp., 952 F.2d 802, 819 (4th Cir. 1991)* ("[W]e reverse the grant of the injunction herein and remand the case for further proceedings consistent with the rulings herein, without prejudice [*9] to the right of the plaintiff to premise its motion on new or changed circumstances."); *Huminski v. Corsones, 396 F.3d 53, 94 (2d Cir. 2005)* ("Upon remand, the district court should consider whether, under present circumstances, permanent injunctive relief is required and, of course, the terms of any such injunction.").

Based on the prospective nature of the relief sought, as well as the significant time lapse subsequent to this court's denial of MercExchange's original motion for an injunction, as set forth in greater detail below, the court denies eBay's motion to strike the exhibits submitted in support of MercExchange's renewed motion for an injunction. First, such evidence is not improper in the absence of a formal motion; second, the majority of such exhibits do not appear to be an attempt to improperly backfill the record and to the extent that such exhibits are in conflict with the court's prior factual findings they will be disregarded; and third, information relating to MercExchange's business relationship with uBid is not duplicative nor untimely. Because the court is willing to accept submissions by both parties that update the court on factual developments [*10] occurring after 2003, the court will permit limited discovery in order to afford the parties the traditional protections of the adversarial system.

**A. MercExchange's failure to file a written motion to reopen the record does not require that MercExchange's exhibits be stricken.**

eBay's motion to strike first seeks to have MercExchange's exhibits stricken on procedural grounds, arguing that new evidence is not properly before the court both because MercExchange failed to file a formal motion to reopen the record and because the opinions of both superior courts failed to suggest that the record be reopened on remand. First, from a legal standpoint, eBay fails to cite any caselaw directly on point suggesting that such new evidence must be stricken in absence of formal motion by MercExchange. Additionally, eBay's allegation that MercExchange failed to file such motion is hypocritical in light of the fact that eBay also failed to file a motion to reopen the record prior to submitting recent PTO reports and other factual exhibits in support of its motion to stay. Second, from a practical standpoint and as conceded by eBay, common sense dictates that a dispute over prospective relief [*11] requires consideration of the facts as they exist at the time of the hearing, not as they existed over three years ago, and this court does not require a superior court to instruct it to apply such common sense requirement. Furthermore, although MercExchange did not file a formal motion seeking to reopen the record, it is clear from the transcript of a telephone status conference conducted by this court on July 28, 2006, that MercExchange announced its intent to introduce additional evidence reflecting factual developments occurring subsequent to trial. The following exchange occurred during such call:

> Mr. Stillman (MercExchange):
> In terms of scheduling, obviously time is
> of the essence with respect to our request

2006 U.S. Dist. LEXIS 91059, *11

for injunctive relief. But nonetheless, we would like the opportunity to supplement the record, the evidentiary record, on that request to bring it current, to make the Court aware of what MercExchange has been about in the three plus years since the jury entered its verdict, and to get some guidance from you about scheduling and how we would go about doing that.
*The Court:*
All right. Mr. Randall.
*Mr. Randall (eBay):*
Your Honor, our view [*12] is that based on the re-exam proceedings -- and the re-exam was initially granted in June of 2004, so it's been going on for two years. There have been two significant rejections of all claims. . . . So we are asking that the Court first consider our motion to stay.

(July 28, 2006 Conf. Call p.6). The excerpt cited above not only establishes that the court and both parties understood that MercExchange would be submitting exhibits reflecting recent factual developments in conjunction with its renewed motion for an injunction, but also highlights the fact that eBay's motion to stay relies almost exclusively upon recent factual developments, that is, the PTO reexamination proceedings. As a result, the court, in its discretion, concludes that reopening the record for the limited purpose of admitting evidence relevant to the parties' motion for an injunction and motion to stay and targeted at the period subsequent to August 6, 2003, is proper notwithstanding the fact that a formal motion was not filed by MercExchange.

**B. The court will disregard the portions of exhibits attempting to introduce facts predating August 6, 2003, that were not previously made part of the record [*13] and those portions attempting to recast the prior record in a manner inconsistent with this court's findings of fact.**

As stated above, the court's decision to reopen the record for the limited purpose of permitting the parties to update the court on factual developments occurring subsequent to this court's August 2003 order does not permit the parties to backfill the record by presenting evidence that was previously available yet not advanced either at trial or in support of MercExchange's initial

motion for an injunction. n3 Likewise, the court's decision to reopen the record does not permit the parties to recast the prior record in a manner inconsistent with the findings of fact associated with the court's denial of MercExchange's original motion for an injunction. Notably, significant portions of the declarations challenged by eBay advance facts and opinions aimed at proving that MercExchange intended to commercialize its inventions from their infancy even though this court's prior findings suggest otherwise. Furthermore, any impropriety contained in such declarations is compounded by the fact that eBay has not had the opportunity to depose the individuals in relation to their [*14] newly submitted declarations. n4

> n3 As discussed below in Part III, the one exception to the August 6, 2003, cutoff date is that the court, in its discretion, will permit the parties to investigate the fraud alleged by MercExchange with respect to eBay's meeting with Kenneth Nahan and the introduction of the Newman video. The court permits such inquiry even though the pertinent facts predate the court imposed cutoff date because eBay produced the Newman video shortly before trial and after the close of discovery; thus, MercExchange may not have previously been permitted sufficient time to fully investigate such matter.

> n4 As previously mentioned, two of the expert declarations were submitted by experts not previously identified by MercExchange.

For example, MercExchange has submitted a recent declaration of Thomas Woolston, MercExchange's president, that purports to document MercExchange's history from its founding until the present. Although the court is willing to consider the portions of such report that [*15] document factual developments occurring subsequent to August 6, 2003, the portions of the declaration advancing Mr. Woolston's portrayal of events prior to such time should have been submitted, if at all, either at trial or in support of MercExchange's original motion for an injunction. Similarly, although the recently submitted expert declaration of Larry Evans, who testified at trial on behalf of MercExchange, permissibly cites trial testimony, it repeatedly offers the opinion that "[f]rom the outset, Mr. Woolston sought to commercialize his patents" (Evans Decl. P 32); such

2006 U.S. Dist. LEXIS 91059, *15

conclusion appears to vary from, and may even be in contravention of, this court's prior finding that "the evidence of the plaintiff's willingness to license its patents, its lack of commercial activity in practicing the patents, and its comments to the media as to its intent with respect to enforcement of its patent rights, are sufficient to rebut the presumption that it will suffer irreparable harm if an injunction does not issue." *MercExchange, 275 F. Supp. 2d at 712.* n5 Although the Supreme Court concluded that neither this court nor the Federal Circuit "correctly applied the traditional [*16] four-factor framework that governs the award of injunctive relief," *eBay Inc., 126 S. Ct. at 1840,* remand permits MercExchange the opportunity to argue that applying the "correct" legal framework to the previous record, as supplemented by interim factual developments, an injunction is warranted; it does not provide the opportunity to recast the prior record. To clarify, the undisturbed record led this court to conclude that prior to 2003, MercExchange exhibited a "willingness to license its patents" a "lack of commercial activity in practicing the patents" and that its "numerous comments to the media before, during, and after this trial indicat[e] that it did not seek to enjoin eBay but rather sought appropriate damages for the infringement." *MercExchange, 275 F. Supp. 2d at 712.* Although MercExchange has every right to argue that such factual findings, applied to the proper legal test, warrant an injunction, or, that such factual findings when considered in light of recent developments, both factual and legal, warrant an injunction, it will not be presented the opportunity to challenge such factual findings. Thus, MercExchange may argue that this [*17] court was legally incorrect in concluding that a willingness to license or lack of commercial activity suggest that an injunction is not warranted; however, it may not attempt to argue that it was never willing to license or that it never had a lack of commercial activity practicing the patents.

> n5 Set forth below is a more complete quote from this court's August 6, 2003, order and opinion discussing MercExchange's lack of commercial activity. The order stated:
>> The defendants next argue that there was evidence adduced at trial proving that the plaintiff is willing to license or sell its patents. On this point, the defendants are correct. Substantial evidence was

adduced at trial showing that the plaintiff does not practice its inventions and exists merely to license its patented technology to others. Indeed, the plaintiff has made numerous comments to the media before, during, and after this trial indicating that it did not seek to enjoin eBay but rather sought appropriate damages for the infringement. The Federal Circuit has observed that "the lack of commercial activity by the patentee is a significant factor in the calculus" of whether the patentee will suffer irreparable harm absent an injunction. *High Tech Medical Instrumentation, Inc. v. New Image Indus., Inc., 49 F.3d 1551, 1556 (Fed. Cir. 1995).* In the case at bar, the evidence of the plaintiff's willingness to license its patents, its lack of commercial activity in practicing the patents, and its comments to the media as to its intent with respect to enforcement of its patent rights, are sufficient to rebut the presumption that it will suffer irreparable harm if an injunction does not issue. Moreover, the plaintiff never moved this court for a preliminary injunction. If it believed that it was suffering irreparable harm by the defendants' continued infringement of its patents, such a motion would have been appropriate. This fact, while certainly not dispositive of the issue, lends additional weight in support of the defendants' arguments that the plaintiff will not be irreparably harmed absent an injunction.

> *MercExchange, 275 F. Supp. 2d at 712* (footnote omitted).

[*18]

In order to preserve the admissible portions of

2006 U.S. Dist. LEXIS 91059, *18

MercExchange's submissions, as well as avoid the delay associated with ordering that MercExchange's experts rewrite their reports without the portions that attempt to recast facts predating August 6, 2003, the court will simply disregard any opinion or argument seeking to re-litigate the court's prior factual findings. n6 The court in no way suggests that it will not entertain counsels' arguments as to how the previous record, established through trial and this court's prior injunction ruling, as well as any interim factual updates, should be applied to the correct legal framework; rather, the court will simply not reconsider its past factual findings regarding the time period prior to August 6, 2003. As a result, counsel for both parties are invited to refer to the prior record, as well as recent factual developments, and argue that such facts, when applied to the proper legal standard, warrant an injunction; however, the court will give no weight to arguments, opinions, or exhibits that attempt to add to, modify, or recast the court's prior factual findings. n7

n6 The court suggests that both parties re-familiarize themselves with this court's August 6, 2003, order prior to the hearing on the motion for an injunction and motion for a stay as the factual findings of the court dealing with the time period prior to August of 2003 remain undisturbed.

[*19]

n7 Although the court does not condone the submission of declarations from previously undisclosed experts, the court recognizes MercExchange's justification for such submissions, namely, that the legal standard for issuing an injunction was in flux throughout the appeal of this matter and appears to remain uncertain today in that the Supreme Court did not expressly address whether the presumption of irreparable harm upon a showing of validity and infringement survives the Supreme Court's decision; however, the court does not believe that an expert primer on irreparable harm suffered by small companies whose patents are infringed offers any significant support for MercExchange's position. First, the Supreme Court cautioned the lower courts about avoiding categorical rules, and the expert declaration offered by Lori Pressman, one of the experts not previously disclosed,

presents virtually no information with respect to MercExchange nor relevant post trial developments, but rather, presents an opinion painted with a very broad brush suggesting that small companies holding patents will always be irreparably harmed absent the right to exclude. Similarly, portions of the other expert reports, such as the Evans declaration, make similar generalizations concluding: "An individual inventor or small company that lacks the financial resources to take on the big guy in high-stakes patent litigation should not be forced to grant compulsory licenses" (Merc. Injunct. Memo Ex.17 P 103). Again, the court will not strike such declarations in light of the fact that MercExchange will be given the opportunity to conduct limited discovery, including depositions of some of such experts if it chooses; however, the court will afford little weight to exhibits espousing categorical rules or seeking to highlight the woes of the small patent holder while ignoring this court's prior findings.

[*20]

C. References to uBid are not duplicative nor untimely.

As can be inferred from the discussion above, the court rejects eBay's contention that references to MercExchange's business relationship with uBid, a factual development occurring subsequent to August 6, 2003, are duplicative or untimely. First, such references are not untimely as MercExchange did not have a business relationship with uBid when the initial motion for an injunction was filed, and thus, evidence regarding uBid is not backfill of the record, but rather, is precisely the type of evidence updating the court on recent developments that is vital to the court's injunction calculus. See *Lyons, 243 F.3d at 799* ("A prospective injunction is entered only on the basis of current, ongoing conduct that threatens future harm.") (emphasis added). Second, although eBay effectively demonstrates that the non-exclusive license entered into between uBid and MercExchange is not particularly lucrative and appears similar to Mercexchange's past non-exclusive licenses, the declaration of Timothy Takesue, the Merchandising Executive Vice President of uBid, highlights the fact that the terms of such contract [*21] are not very favorable to MercExchange primarily because eBay is infringing on

2006 U.S. Dist. LEXIS 91059, *21

MercExchange's '265 patent and that an exclusive license n8 or merger has been contemplated but has not come to fruition due to eBay's infringement. The sworn claims that eBay's infringement on the '265 patent is directly hindering MercExchange's business opportunities distinguishes uBid from most of MercExchange's past licencing partners, as the trial record establishes that some of MercExchange's past difficulties commercializing its patents were not a result of eBay's infringement. Furthermore, sworn testimony from a uBid executive establishing that a merger between MercExchange and an internet auction website that directly competes with eBay was contemplated, yet foreclosed as a result of eBay's infringement distinguishes the business relationship with uBid from past licencing agreements. Thus, uBid is not unique based on the terms of the current non-exclusive license, but rather, the potential for an exclusive license or merger and the apparent value of such relationship to both uBid and MercExchange if an injunction prevented eBay from offering "buy-it-now" sales on its website while uBid, a direct [*22] competitor, was able to offer such option on its website. n9 As a result, the court will not strike MercExchange's submissions advancing evidence with respect to uBid; however, as previously mentioned, the court will reopen the record in a limited manner in order to permit eBay to perform depositions and further investigate the MercExchange/uBid business relationship.

n8 eBay argues that the terms of several of MercExchange's prior licenses would preclude MercExchange from granting an exclusive license to uBid. Such argument, even if correct, ignores the reality that uBid appears to place virtually the entire value of an exclusive license to the '265 patent on the ability to utilize such patent while preventing eBay from doing so. Thus, even if technically MercExchange could not grant uBid an exclusive license to the '265 patent covering every field of use, a nearly exclusive license that prevents MercExchange from granting further licenses to uBid's competitors, especially to eBay, ultimately appears to have the same effect and value as what MercExchange and uBid refer to as an "exclusive license."

[*23]

n9 The recurring issue underlying nearly

every dispute presently before the court is whether or not eBay has designed around the '265 patent; if it has, then an exclusive license is of virtually no value to uBid, nor is an injunction of much value to MercExchange. Although eBay has offhandedly referred to its purported design around both in court and in its briefs, eBay appears to have failed to advance any evidence nor even make the express, yet uncorroborated, claim that it has in fact designed around the '265 patent.

**D. Although the court will permit additional discovery, such discovery is limited in scope and time.**

Although the court recognizes the necessity of updating the record with recent factual developments, the court will not permit the parties to backfill or recast facts in a manner inconsistent with this court's prior findings. However, even though portions of the challenged declarations plainly ignore this court's prior factual findings and at times advance opinions that appear more appropriate for counsel to argue, the court declines to strike such reports because the court [*24] recognizes, first, that its prior factual findings were limited, and second, that the expert reports generally do not attempt to backfill the record by adding new facts, but rather, merely cite trial testimony in an attempt to highlight MercExchange's version of pre-2003 events. Thus, rather than striking such reports, the court will simply disregard and give no weight to any portions of such reports that the court deems to be inconsistent with its prior factual findings.

In light of the court's decision not to strike such reports, nor strike references to uBid, the court must permit some form of discovery to ensure that the parties have a fair opportunity to investigate and challenge evidence advanced by the opposing party. n10 As discussed at the hearing on this matter, eBay relies on *Lussier v. Runyon, 50 F.3d 1103 (1st Cir. 1995)* for the proposition that "once the record is closed, a district court, absent waiver or consent, ordinarily may not receive additional factual information of a kind not susceptible to judicial notice unless it fully reopens the record and animates the panoply of evidentiary rules and procedural safeguards customarily available to [*25] litigants." *Id. at 1105-06* (emphasis added). Adding some context to such quote, in Lussier the district court was

"[d]issatisfied with the trial evidence" regarding the plaintiff's future disability benefits, so the court, in an effort to accurately calculate plaintiff's damages, ordered the parties to file a status report concerning certain disability payments that plaintiff would receive in the future. *Id. at 1113.* Plaintiff, "though objecting vigorously to the directive," submitted some evidence relating to his interim disability payments, whereas the defendant offered no information. Id. Subsequently, the court, apparently exasperated with defendant's failure to submit requested information, used the plaintiff's forced submission to calculate the present value of plaintiff's future disability benefits, reduced plaintiff's damages based on such calculation, and "paid lip service" to the fact that it had "reopened the record." *Id. at 1113, 1115 n.16.* On appeal, the First Circuit concluded that although the district court claimed to have reopened the record, its actions failed to approach the proper method of reopening the [*26] record as the court, "over the plaintiff's objection, engaged in a unilateral pursuit of additional evidence without affording the parties the standard prophylaxis that generally obtains at trial . . . [including] the right to object to evidence, the right to question its source, relevance, and reliability, the right to cross-examine its proponent, and the right to impeach or contradict it." *Id. at 1115 n.16.*

 n10 Although MercExchange firmly opposes reopening discovery as doing so delays resolution of its motion for an injunction, it was MercExchange that submitted numerous expert reports, some nearly forty pages in length with hundreds of pages of exhibits, and a declaration in support of a new allegation that eBay committed a fraud on this court. The court's decision to consider such materials necessitates that eBay be permitted the opportunity to investigate them.

Although this court's views are in alignment with the First Circuit's, the court does not agree with eBay's broad categorization [*27] of the Lussier opinion standing for the proposition that if the record is reopened, it must be reopened without limitation. Rather, Lussier espouses the proposition that a court, no matter what its motivations, may not undertake the unilateral pursuit of extra-record evidence nor under any circumstances consider evidence advanced by one party concerning disputed material facts that the opposing party is not presented an opportunity to

challenge. *Id. at 1113*; see also *Black v. TIC Investment Corp., 900 F.2d 112, 116 (7th Cir. 1990)* ("Where new evidence is presented in a reply to a motion for summary judgment, the district court should not consider the new evidence without giving the movant an opportunity to respond."). Such requirement is a "fundamental principle of our jurisprudence" as "[o]urs is a system that seeks the discovery of truth by means of a managed adversarial relationship between the parties, [and] [i]f we were to allow judges to bypass this system, even in the interest of furthering efficiency or promoting judicial economy, we would subvert this ultimate purpose." *Lussier, 50 F.3d at 1113-14.* Thus, a district [*28] court may, in its discretion, "reopen the record" in a limited manner with respect to a targeted issue, so long as the parties are presented an equal and fair opportunity to investigate the facts and challenge the opposing party's evidence through traditional adversarial means. See, e.g., *Black, 900 F.2d at 116* (remanding and explaining that a late filed affidavit could either be considered or disregarded by the district court; however, if accepted, the court must afford the opposing party the opportunity to respond); *Chamberlain v. Denny's, Inc., 206 F.R.D. 418, 419-20 (D. Md. 2002)* (permitting the plaintiffs to file an affidavit from an individual improperly omitted from a prior discovery request because "the evidence to be presented by the witness [tardily identified] was particularly significant and dealt with a key issue in the case"; however, because such individual "had not been previously identified as a witness in the case, the Court granted defendant the right to depose him and ascertain pertinent facts relating to his observations . . .").

Here, the court's denial of eBay's motion to strike MercExchange's exhibits necessitates that in, [*29] order to preserve the adversarial system, the court reopen the record and permit the parties additional time to perform limited discovery into the new evidence submitted to the court. As requested by eBay at the hearing on this matter, the parties are permitted to perform additional depositions as well as serve document requests; however, all discovery requests must be confined to the investigation into events occurring subsequent to this court's denial of MercExchange's initial motion for an injunction. Furthermore, because the court's decision to reopen the record is not made without consideration of MercExchange's interest in a speedy resolution of its motion for an injunction and the extensive discovery previously conducted, the court will limit each party to five depositions, lasting no longer than six hours each,

and all depositions must be concluded by March 2, 2007. Additionally, all document requests must be served no later than January 12, 2007, and objections or responses are due no later than February 2, 2006. In the event that discovery disputes arise, the parties must contact Magistrate Judge James Bradberry no later than February 6, 2007, to determine an expedited discovery [*30] dispute procedure. Such limited time-frame should be more than sufficient to afford the parties, which each have extensive legal teams spanning multiple law firms, adequate time to investigate the pertinent issues, yet at the same time will allow for a hearing on the motion for an injunction and motion to stay to be conducted in the near future. Following the conclusion of discovery, the parties will be permitted until March 16, 2007, to file a supplemental brief, not to exceed twenty pages, in support of its motion and in opposition of the opposing party's motion. n11 The court anticipates that such briefs will focus primarily on the updated discovery and the impact of such discovery on the pending motions.

> n11 The court is cognizant of MercExchange's desire for the speedy resolution of its motion and the court begrudgingly permits the parties until March 2, 2007, to complete additional discovery, which, along with two weeks for supplemental briefing, delays resolution of this matter until at least March 16, 2007. The court originally intended to permit the parties a significantly shorter period to conduct discovery; however, due to the close proximity of the issuance of this order to the December holiday season, realistically, the court recognizes that neither the lawyers nor the deponents would be able to comply with such a schedule without modification.

[*31]

The court's decision to limit discovery is permitted by *Federal Rule of Civil Procedure 26(b)(2)* which states: "By order, the court may alter the limits in these rules on the number of depositions and interrogatories or the length of depositions under *Rule 30*. By order or local rule, the court may also limit the number of requests [for admission]." *Fed. R. Civ. P. 26(b)(2)*. Thus, pursuant to such rule and in recognition of the already well-developed record, there will be no interrogatories and no requests for admission during the limited

discovery period; however, as discussed above, the court will permit both eBay and MercExchange to perform five depositions and to serve document requests relevant to the time period beginning August 6, 2003. The propriety of the court's limits on discovery is further bolstered by the fact that eBay stated at oral argument that it was not seeking never-ending discovery, but intended on submitting document requests, as well as performing a limited number of depositions including corporate depositions of uBid, MercExchange, and possibly Altitude Capital. n12 Although MercExchange [*32] has not requested the right to conduct depositions or serve document requests, the court will permit each party the same discovery rights. To reiterate, the permissible discovery must relate to developments subsequent to August 6, 2003, that are relevant to MercExchange's motion for an injunction and eBay's motion to stay the proceedings.

> n12 The court sees minimal relevance in exploring the details of Altitude Capital's alleged capitalization of MercExchange because even if MercExchange recently received a multi-million dollar influx from such source, considering the totality of the circumstances and the damages at stake in this litigation, such fact appears to have little impact on the determination of whether or not an injunction should issue. However, the court will permit the parties to choose how to allocate their five permitted depositions, so long as the depositions seek to obtain information relating to events occurring subsequent to this court's August 6, 2003, order.

**III. eBay's Motion to Strike [*33] the Nahan Declaration**

eBay's challenge to the sworn declaration submitted by Kenneth Nahan prompted a separate motion to strike because such declaration was not filed in support of MercExchange's injunction motion, but rather, was filed as an exhibit to MercExchange's response in opposition to eBay's motion to stay the proceedings. MercExchange submits the Nahan declaration in support of its claim that, at trial, eBay perpetrated a fraud on the court and, therefore, is not deserving of a favorable ruling in equity. The fraud alleged by MercExchange involves eBay's failure to disclose that it had a meeting with Mr. Nahan prior to trial at which eBay was allegedly informed that

2006 U.S. Dist. LEXIS 91059, *33

the Newman video, an exhibit introduced by eBay at trial, was confidential. eBay contends that such claim is false, irrelevant, and untimely; furthermore, eBay denies all allegations of fraud.

eBay attempts to suppress the Nahan declaration based on arguments similar to those discussed in the previous section of this order, specifically, both that MercExchange did not file a motion seeking to reopen the record and that MercExchange previously had the opportunity to file such declaration or call Mr. Nahan [*34] as a witness and its failure to do so makes the declaration untimely. Additionally, eBay highlights the fact that, at trial, MercExchange challenged the admissibility of the Newman video and objected to statements suggesting that such video was confidential, making submission of the Nahan declaration duplicative and unwarranted. MercExchange counters by pointing out that although the facts regarding eBay's meeting with Mr. Nahan may have previously been in existence, eBay did not produce the Newman video until after the close of discovery and eBay never informed MercExchange or the court of its meeting with Mr. Nahan. MercExchange contends that is it disingenuous for eBay to have concealed the confidential nature of the video, as well as its meeting with Mr. Nahan, and then fault MercExchange for failing to uncover such intentional concealment.

Along with the claims duplicative to the motion to strike the injunction exhibits, eBay also seeks to have portions of the Nahan declaration stricken for containing inadmissible hearsay. n13 Furthermore, eBay contends that the Nahan declaration should be stricken because MercExchange failed to provide evidence corroborating Mr. Nahan's confidentiality [*35] claims. n14 In response to the hearsay claim, MercExchange argues that all statements made by eBay's counsel are not hearsay under *Rule 801(d) of the Federal Rules of Evidence* as they represent statements by a party opponent. With respect to the lack of corroboration, MercExchange contends that because it was eBay's burden at trial to prove that the Newman video was public, neither MercExchange or Mr. Nahan need to provide corroboration to establish the confidentiality of the video.

n13 Numerous paragraphs of the Nahan declaration include references to what Mr. Nahan was told by counsel for both MercExchange and eBay. Additionally, two paragraphs contain information apparently relayed from eBay's counsel, to Mrs. Nahan, to Mr. Nahan.

n14 MercExchange has provided what purports to be a control log and several sample unsigned confidentiality agreements in an attempt to corroborate Mr. Nahan's claims that the Newman video was maintained as confidential. eBay challenges the authenticity, relevancy and admissibility of such exhibits.

[*36]

As discussed in detail in Part III above, the court will not strike any of MercExchange's exhibits, including the Nahan declaration, based on the lack of a formal motion to reopen the record. As to the timing of the Nahan declaration, eBay's failure to produce the Newman video until after the close of discovery supports MercExchange's claim that it never had the opportunity to fully investigate the facts surrounding the video. That being said, the Nahan declaration, submitted by MercExchange in opposition to eBay's motion to stay, appears to be rather far afield from the primary issues before the court, and although certainly relevant to the court's equity calculus, the court recognizes not only that the declaration includes hearsay, but that Mr. Nahan has minimal corroboration for his position and that MercExchange has submitted conflicting affidavits. n15 Considering which party carries the burden, although MercExchange is correct that at trial the burden was on eBay to prove that the video was in the public domain, thus potentially invalidating MercExchange's patents, at this stage in the proceedings it is MercExchange that is attempting to prove that eBay committed a fraud [*37] on the court, and therefore, it is MercExchange that carries the burden to establish not only that the video was in fact confidential, but that eBay knew it was confidential and represented otherwise to the court.

n15 eBay submits affidavits from Douglas Graham and Karen Bacon, past officers of Honicorp Inc. (Honicorp), Mr. Nahan's company. Such affidavits are offered in support of eBay's claims that the Newman video was not confidential and that eBay's counsel was informed prior to trial that the Newman video was not confidential.

2006 U.S. Dist. LEXIS 91059, *37

Based on the considerations discussed above, the court denies eBay's motion to strike the Nahan declaration as although MercExchange's allegation of fraud may be somewhat tangential to the primary issues before the court, it is true that if eBay has perpetrated a fraud on the court it is undeserving of a ruling in equity. The court does, however, recognize both that several statements within the Nahan declaration appear to be inadmissible hearsay and that MercExchange's evidence [*38] attempting to corroborate Mr. Nahan's statements is not compelling. Likewise, although the past Honicorp officers' affidavits, advanced by eBay, characterize the video as non-confidential, such affidavits suffer from a similar infirmity as the Nahan affidavit as portions are plainly hearsay. Therefore, as with the portions of the expert reports that the court deems improper, the court will give no weight to hearsay statements contained in any affidavit before the court and will give the weight the court deems appropriate to the portions of the declarations that are properly before the court.

In anticipation of the court's denial of eBay's motion to strike the Nahan declaration, eBay has requested both in its memoranda and at oral argument that, in that alternative, it be afforded the opportunity to depose Mr. Nahan as well as file declarations in opposition of the Nahan declaration. However, as previously noted, eBay has in fact already filed two declarations in opposition of the Nahan declaration, and therefore, eBay's request to submit additional declarations is denied. n16 As for eBay's request to depose Mr. Nahan, the previous section of this order indicated that the court is [*39] permitting both parties the opportunity to perform five additional depositions and if eBay chooses to use one if its five depositions on Mr. Nahan, it may do so. Likewise, MercExchange is permitted to allocate two of its depositions to the two Honicorp officers that offered declarations in opposition of the Nahan declaration if it chooses to do so. The court clarifies that the issue regarding the Newman video is the only issue pre-dating the court's August 6, 2003, denial of MercExchange's injunction motion that the parties are permitted to investigate during discovery, and that such investigation is being permitted only as a result of eBay's tardy submission of the Newman video after the close of trial discovery.

n16 Such declarations are attached as exhibits 18 and 20 to eBay's reply brief in support of its

motion to stay. Exhibit 18 is a sworn statement offered by Douglas Graham, the president of Honicorp from 1991-1993 and it suggests both that the Newman video was not confidential and that Graham told eBay it was not confidential in March, 2003 (eBay Reply to Mo. to Stay Ex.18).

[*40]

**IV. eBay's Motion for Leave to Submit a Motion to Enforce the Protective Order**

Unlike eBay's motions to strike, which are directly related to the motion for an injunction and motion to stay, eBay's motion to enforce the court's protective order is somewhat discrete; thus, eBay properly filed a request to file such motion rather than simply filing it. Furthermore, although eBay was correct to request permission to file a motion to enforce the protective order, eBay's allegations with respect to the protective order are at least tangentially related to the two primary motions before the court because eBay alleges improper participation in the PTO reexamination proceedings; such proceedings are plainly pertinent to both the motion to stay and motion for an injunction. Additionally, if the court were to deny eBay leave to file such motion the court would potentially be permitting violations of the protective order to go unchecked. Finally, the parties have already fully briefed the motion to enforce the protective order, and thus, even though this court previously instructed the parties not to file additional motions, at this stage there is little justification for the court not [*41] to reach the merits of the fully briefed motion. Therefore, eBay's motion for leave to submit its motion to enforce the protective order is granted.

**V. eBay's Motion to Enforce the Protective Order**

On March 8, 2002, this court entered a stipulated protective order submitted by the parties; although the court did not draft such order, its final provision states that the court may modify the protective order "at any time upon a showing of good cause" (March 8, 2002 Order P 21). eBay's instant motion to enforce the protective order was prompted by the fact that experts originally engaged by MercExchange to testify at the trial on this matter have made submissions to the PTO on behalf of MercExchange in support of the validity of the '265 and '051 patents. Such experts, prior to being permitted to view eBay's confidential business information, signed sworn statements indicating that they

read and understood the terms of the protective order, agreed to be bound by the conditions of such order, and would not use or disclose any confidential information except for purposes explicitly allowed by the order. eBay contends that the protective order bars such experts from having any involvement [*42] in the PTO reexamination of the patents at issue in the instant litigation, whereas MercExchange contends that the paragraph of the protective order directed at outside experts does not bar such involvement. eBay's motion seeks relief in three forms: first, eBay requests that this court order MercExchange's experts, Drs. Weaver, Palmer, and Frieder, to cease all participation in patent prosecution activities on behalf of MercExchange; second, that MercExchange be ordered to withdraw all declarations submitted to the PTO by such experts and all new or amended claims supported by such declarations; and third, that MercExchange maintain a log, for in camera inspection, of all documents relating to communications with, or analysis by, its experts regarding patent prosecution efforts.

After carefully considering the merits of eBay's motion, the court determines that MercExchange has not violated the terms of the protective order, and thus, it is not proper for this court to order MercExchange to withdraw any expert declarations or related claims. n17 However, the court also concludes that the spirit of the protective order suggests that experts who accessed eBay's confidential information [*43] should not be participating in the PTO reexamination of the very patents that constituted the core of the litigation such experts were involved. As a result, the court determines that there is "good cause" to modify the protective order to require that, from this point forward, any expert with prior access to eBay's proprietary information shall no longer participate in the PTO reexamination of any of the patents at issue in the instant litigation. n18 The court reaches such determination in spite of the fact that there has been no showing that confidential information has been misused because the addition of fifty-two claims to one of the patents constituting the core of the instant litigation creates the very real potential for the unintentional misuse of confidential information.

n17 For brevity's sake, the court avoids an extensive discourse into the textual analysis of the protective order and deems it sufficient to explain that although eBay is correct that the protective

order states that under "no circumstances shall any person who accesses [confidential] material" participate in patent prosecution activities, MercExchange's position that the protective order's structure limits the application of such broad language to law firms and their employees is more persuasive than eBay's contention that it covers all individuals, including experts. (March 8, 2002 Order P 4).

[*44]

n18 MercExchange argues that much of the information previously marked as confidential became public at trial, thereby losing its confidential status. The court recognizes, however, that because summary judgment was granted on the '051 patent, vast amounts of proprietary information were not publicly displayed at trial. Likewise, even though the '265 patent was litigated in open court, a significant amount of eBay's confidential information subject to review by MercExchange's experts was not revealed at trial. Therefore, any expert viewing any of eBay's information that remains confidential must cease involvement in the PTO reexamination.

The court's decision to prohibit MercExchange's trial experts from future involvement in the PTO reexamination is based on several factors balanced by the court including: (1) the apparent minimal burden on MercExchange to retain alternative experts who did not personally examine eBay's confidential information if future reports or consulting is necessary; n19 (2) the reality that the ex parte nature of the PTO reexamination process prevents eBay from effectively [*45] monitoring disclosures made by experts that viewed confidential information coupled with the fact that it is not within the province of this court to provide monitoring or oversight of submissions to the PTO; and (3) as several cases cited by eBay effectively demonstrate, it is oftentimes impossible for an individual, even with the noblest of intentions, to delineate between ideas that they may advance as a result of their own creation, and those influenced by past exposure to confidential information. The high risk of inadvertent disclosure of confidential information due to the difficultly in mentally segregating

2006 U.S. Dist. LEXIS 91059, *45

the origin of ideas, n20 as well as the inability of both eBay and this court to police experts' communications with the PTO, is precisely why the court believes that an absolute bar from participation in the reexamination of the very patents at the heart of the instant litigation is necessary. n21

n19 See, e.g., *U.S. Steel Corp. v. United States, 730 F.2d 1465, 1468 (Fed. Cir. 1984)* (recognizing that forcing the plaintiffs to rely on newly retained counsel "would create an extreme and unnecessary hardship"); *Motorola, Inc. v. Interdigital Tech. Corp., No. 93-488-LON, 1994 U.S. Dist. LEXIS 20714, at *15 (D. Del. Dec. 19, 1994)* (unpublished) ("Courts have also considered the hardship to the client if counsel is disqualified or restricted in some manner.").

[*46]

n20 In U.S. Steel Corp., the Federal Circuit explained: "Inadvertence, like the thief-in-the-night, is no respecter of its victims. Inadvertent or accidental disclosure may or may not be predictable. To the extent that it may be predicted, and cannot be adequately forestalled in the design of a protective order, it may be a factor in the access decision." *730 F.2d at 1468.*

n21 Although MercExchange cites several cases in support of its contention that broad language in a protective order prohibiting involvement in patent prosecution for similar patents or in a similar field for a set number of years is disfavored, two significant factual distinctions exist between such cases and the instant matter. See, e.g., *Trading Techs. Int'l v. Espeed, Inc., No. 04 C 5312, 2004 U.S. Dist. LEXIS 19429, 2004 WL 2534389, at *1 (N.D. Ill. Sept. 24, 2004)* (unpublished) (refusing to bar the plaintiff's attorney who is "primarily a litigator" from being involved in prosecuting patents on plaintiff's behalf for a specified number of years because: (1) such attorney is generally only "incidentally involved in patent applications" and "acts as an advocate, not as a drafter of specifications and claims"; and (2) the court had no reason to doubt that such attorney would "conscientiously keep in mind and act to uphold

his professional obligations"); *AFP Advanced Food Products LLC v. Snyder's of Hanover Mfg., No. Clv.A. 05-3006, 2006 U.S. Dist. LEXIS 426, 2006 WL 47374, at *2 (E.D. Pa. Jan. 6, 2006)* (unpublished) ("Barring AFP's attorneys from prosecuting similar patents for two years following this suit, without some tangible reason or good cause other than the general threat of inadvertent misuse of discovered materials, is the exact type of overly broad and generalized fear rejected in [various past federal cases]."). The two primary differences between the instant dispute and such cases are, first, that the cited cases involve barring lawyers from involvement in patent prosecution, not experts, and not only must a court presume a heightened level of ethical conduct on the part of lawyers as compared to experts, but also, requiring a party to replace counsel they have a longstanding relationship with creates a much greater burden than requiring a party to hire different experts. See *Safe Flight Instrument Corp. v. Sundstrand Data Control, Inc., 682 F. Supp. 20, 23 (D. Del. 1988)* ("[C]ounsel who are admitted to the Bar of this Court are officers of the Court and are bound by the Code of Professional Responsibility."). Second, the patent prosecution activities that eBay seeks to bar in the instant motion do not involve "similar patents" or future patents in a "similar field," but rather, involve the reexamination and addition of claims to the very patents constituting the core of the instant litigation.

[*47]

Although, as previously mentioned, it does not appear that MercExchange's experts have improperly relied upon eBay's proprietary information, the post-trial addition of fifty-two claims to the '051 patent creates a very real and expressly identifiable potential for misuse of confidential information as MercExchange attempts to redefine the scope of such patent and defend the validity of both the '051 patent and the '265 patent after preliminary PTO findings suggest that such patents may be invalid. In *In re Papst Licensing, GmbH, Patent Litig., 2000 U.S. Dist. LEXIS 6374, No. MDL 1278, 2000 WL 554219 (E.D. La. May 4, 2000)* (unpublished), the court concluded:

[I]t is clear that the advice and participation of the Papst parties' counsel in preparation and prosecution of patent applications related to the patents in suit is an intensely competitive decisionmaking activity and would be informed by access to the Non-Papst parties confidential information. Counsel's ability to file new claims in existing and pending patents based on the confidential information discovered during the course of this litigation poses an unacceptable opportunity for inadvertent disclosure and misuse. [*48] Although the Court is confident that counsel for the Papst parties maintains the highest ethical and professional standards, the risk of inadvertent disclosure and misuse and the difficulty of distinguishing the source of the Papst parties' basis for filing new claims are great.

2000 U.S. Dist. LEXIS 6374, at [WL] *4 (emphasis added). n22 Similarly, in *Mikohn Gaming Corp. v. Acres Gaming Inc.*, 50 U.S.P.Q.2d 1783 (D. Nev. 1998), the law firm representing the defendant in district court was also prosecuting patent applications on behalf of defendant that were "part of the very core of th[e] suit," and the court found that were such firm given access to plaintiff's proprietary technology it "would be in the 'untenable position' of having to either refuse his client legal advice on competitive design matters or violate the protective order's prohibition against revealing [plaintiff's] technical information." *Id.* at 1785-86. The court noted that "[n]o matter how much good faith [such lawyers] might exercise, it is unrealistic to expect that . . . knowledge of [plaintiff's] secret technology would not or could not influence the nature of his advice to [defendant]"; [*49] therefore, the court concluded that the defendant's patent prosecution firm could not view the plaintiff's confidential information. n23 *Id.* at 1786. Finally, in *Motorola, Inc. v. Interdigital Tech. Corp.*, No. 93-488-LON, 1994 U.S. Dist. LEXIS 20714 (D. Del. Dec. 19, 1994) (unpublished), the district court noted that because the defendant's attorneys were currently prosecuting patent applications related to the very patents at issue in the lawsuit, if such attorneys were permitted to view plaintiff's "voluminous confidential information" than they "would have to constantly challenge the origin

of every idea, every spark of genius." *1994 U.S. Dist. LEXIS 20714, at 14-15*. The court characterized such segregation of ideas as a "sisyphean task, for as soon as one idea would be stamped 'untainted,' another would come to mind," and the "level of introspection that would be required is simply too much to expect, no matter how intelligent, dedicated, or ethical the [defendant's] attorneys may be." *1994 U.S. Dist. LEXIS 20714, at *15*. As a result, the court barred the defendant's lawyers and employees that viewed plaintiff's confidential information from participating in patent prosecution. [*50] *1994 U.S. Dist. LEXIS 20714, at 17-18*.

n22 Notably, the quote from *In re Papst Licensing* talks only of counsel's "ability to file new claims" as part of the reexamination process, whereas here, new claims were in fact filed.

n23 This court is aware of the District of Maryland's recent decision in *MedImmune, Inc. v. Centocor, Inc.*, 271 F. Supp. 2d 762 .(D. Md. 2003), which permitted patent prosecution counsel to view the opposing party's confidential information during the course of discovery. However, the facts of *MedImmune* are inapposite from both *Mikohn* and the instant facts, and were expressly recognized as such in the *MedImmune* opinion, which explained that, unlike *Mikohn*, there was no showing that "patent counsel was currently prosecuting patents on the exact same subject matter of the litigation." *Id.* at 775 n.14 (emphasis added). Furthermore, the instant matter is readily distinguishable from *Interactive Coupon Mktg. Group v. H.O.T! Coupons, L.L.C.*, No. 98 C 7408, 1999 U.S. Dist. LEXIS 12437, 1999 WL 618969 (N.D. Ill. Aug. 9, 1999) (unpublished) which barred patent prosecution counsel from viewing confidential information because counsel "has represented and is likely to represent [the plaintiff] in the prosecution of numerous related patents, and . . . is deeply involved in representing the client in multiple, related infringement cases in the context of a fluid, developing technology." *1999 U.S. Dist. LEXIS 12437, at [WL] *3* (emphasis added). Unlike *Interactive Coupon*, here, it is not past or potential future patent prosecution, nor merely "related" patents at issue, but rather, here, the court seeks to prevent experts that accessed eBay's confidential information

2006 U.S. Dist. LEXIS 91059, *50

from participating in the reexamination of the very patents constituting the core of the litigation.

[*51]

Unlike *Papst*, *Mikohn*, and *Motorola*, here, the issue is not whether attorneys actively participating in patent prosecution may view confidential information; n24 rather, the issue is whether experts that previously participated in litigation as trial experts and accessed confidential information during the course of such engagement may later participate in the reexamination of the very patents they were retained to opine on. Although this court recognizes the difference between an expert's involvement and an attorney's involvement, including the differences in the ability to influence strategic decisionmaking, the court notes that segregating patent prosecution and patent litigation to two separate law firms would lose its intended purpose if consultants that qualify as experts in the field of claimed inventions were permitted to view an opposing party's confidential information, work closely alongside litigation counsel, and then subsequent to trial, crossover and work alongside patent prosecution counsel during the reexamination of the very same patents. Furthermore, here, the impropriety of such crossover is multiplied by the fact that MercExchange has added fifty-two claims [*52] to one of the patents at the core of the litigation. Although the court does not dispute MercExchange's legitimate desire to continue reexamination with aid from experts familiar with the facts of this case and the patents at issue, if, as MercExchange contends, its experts' involvement in the reexamination is truly limited to disputes about the scope of prior art and other matters plainly distinct from eBay's confidential information, than MercExchange will suffer little prejudice in being required to rely on alternative experts that have not accessed eBay's confidential information.

> n24 MercExchange has properly segregated trial representation and patent prosecution to two separate law firms.

In summary, although MercExchange's construction of the previously entered protective order appears correct, the court at this time modifies such order to prohibit MercExchange's outside experts and independent consultants that viewed eBay's confidential information from any further involvement in the PTO reexamination

[*53] of the patents subject to the instant litigation. Such remedy is "broad enough to protect [eBay's] confidential information, yet seeks to minimize the hardship to [MercExchange]" as the court's prohibition applies only to the patents at issue in the instant lawsuit. *Motorola, 1994 U.S. Dist. LEXIS 20714, at *18*. Although modifying the protective order based on good cause, the court denies eBay's request that any past submissions, or claims founded on such submissions, be ordered withdrawn from the PTO as the court is mindful of its responsibility not to disrupt the PTO's administrative proceeding, MercExchange's and eBay's interest in a timely resolution of both the instant litigation and the PTO reexamination, and the fact that MercExchange's experts' submissions were not in violation of the protective order as written. Furthermore, as suggested by the above findings, the court denies eBay's request that MercExchange maintain a log for in camera review of all expert submissions to the PTO, as past submissions were not improper, and future submissions will not occur in light of this court's ruling.

**V. Conclusion**

Based on the prospective nature of the relief [*54] sought in MercExchange's motion for an injunction and eBay's motion for a stay of the proceedings, as well as the fact that both parties rely heavily on factual developments occurring subsequent to this court's denial of MercExchange's original motion for an injunction, the court deems it necessary to reopen the record and permit the parties to investigate recent factual developments through the adversarial process. Although the court recognizes that permitting the parties to perform additional depositions and submit document requests will delay the resolution of the pending motions, an apparent detriment to MercExchange, the court notes that it was MercExchange that chose to submit numerous expert declarations and other exhibits in support of its injunction motion, and MercExchange simply cannot have the benefit of the court considering such submissions without the associated detriment of eBay being permitted time to investigate them.

Although the court's decision to reopen the record is properly limited to developments occurring after August 6, 2003, the date this court denied MercExchange's initial motion for an injunction, the court will permit inquiry into eBay's production of [*55] the Newman video in light of its pre-trial meeting with Kenneth Nahan.

2006 U.S. Dist. LEXIS 91059, *55

Although the facts regarding such matter predate August 6, 2003, the court recognizes that eBay produced the Newman video after the close of trial discovery and that MercExchange never had the opportunity to fully investigate such matter.

The court grants eBay's motion to file its motion to enforce the protective order; however, after considering the substantive motion, the court determines that MercExchange's experts have not in fact violated the protective order as written. However, after considering the briefs and oral arguments, the procedural posture of both this case and the PTO reexamination proceedings, and the intended goals of the protective order, the court agrees with eBay that trial experts and consultants that viewed eBay's confidential information should not be permitted to participate in the PTO reexamination proceedings of the very same patents at the heart of the litigation. As a result, the court, for good cause shown, modifies the protective order to require that, from this point forward, any non-party expert or outside consultant that viewed eBay's confidential information cease participation [*56] in the PTO reexamination of the patents at issue in the instant litigation.

In summary, both of eBay's motions seeking to strike newly submitted evidence are **DENIED**. As a result of such denial, the court **PERMITS** both parties until March 2, 2007, to perform additional discovery into eBay's knowledge and representations regarding the Newman video as well as all relevant factual developments occurring subsequent to August 6, 2003. As previously discussed, in recognition of the already

well-developed record, there will be no interrogatories or requests for admission; however, both parties are permitted to conduct five depositions, each lasting no longer than six hours. Additionally, document requests may be served by both parties no later than January 12, 2007, and objections or responses to such requests are due no later than February 2, 2007. Finally, each party is afforded until March 16, 2007, to submit a single supplemental brief in support of its motion and in opposition of the opposing party's motion; such brief is limited to 20 pages in length.

The court **GRANTS** eBay's motion for leave to submit the protective order motion and **GRANTS** in part, and **DENIES** [*57] in part, the substantive protective order motion. Specifically, the court **GRANTS** the portion of the motion requesting that experts that viewed eBay's confidential information be prohibited from further involvement in the PTO reexamination of the patents at issue in this litigation and **DENIES** the remainder of such motion.

The Clerk is **REQUESTED** to mail copies of this Order to counsel of record.

**IT IS SO ORDERED.**

Jerome B. Friedman

UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
December 18, 2006

# EXHIBIT 2

AO88 (Rev. 12/06) Subpoena in a Civil Case

Issued by the

# UNITED STATES DISTRICT COURT

Southern                    DISTRICT OF                    California

MercExchange, L.L.C.                    **SUBPOENA IN A CIVIL CASE**

V.

eBay Inc. and Half.com, Inc.

Case Number:[1]  2:01-CV-736
Pending in E.D. Va.

TO:  Fish & Richardson
     12390 El Camino Real
     San Diego, CA 92130

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See the attached Schedule A

| PLACE    Skadden, Arps, Slate, Meagher & Flom LLP<br>300 South Grand Avenue, Suite 3400, Los Angeles, CA 90071 | DATE AND TIME<br>1/24/2007 10:00 am |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
|  | 1-11-07 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Jeff Randall of Skadden, Arps, Slate, Meagher & Flom, LLP (Def. Atty.)
525 University Ave., Suite 1100, Palo Alto, CA 94301 Tel. 650-470-4580

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## SCHEDULE A

Pursuant to Federal Rules of Civil Procedure 34 and 45, defendants eBay Inc. and Half.com, Inc. ("eBay") hereby request that Fish & Richardson produce for eBay's inspection and copying, each and every document and thing in its possession, custody, or control identified and described in the following Document Requests, such items to be produced on January 24, 2007 at 10:00 am PST at the offices of eBay's counsel, Skadden, Arps, Slate, Meagher, & Flom, 300 South Grand Avenue, Suite 3400, Los Angeles, CA 90071, unless otherwise agreed.

**I.    DEFINITIONS AND INSTRUCTIONS**

1.    "MercExchange" refers to plaintiff MercExchange, L.L.C. and its parents, subsidiaries, affiliates, officers, principals, agents, divisions, departments, partners, predecessors, and successors thereof.

2.    "uBid" refers to plaintiff uBid and its parents, subsidiaries, affiliates, officers, principals, agents, divisions, departments, partners, predecessors, and successors thereof.

3.    "Altitude Capital" refers to plaintiff Altitude Capital and its parents, subsidiaries, affiliates, officers, principals, agents, divisions, departments, partners, predecessors, and successors thereof.

4.    "Reexamination experts" refers to Alfred Weaver, Jonathan Palmer, Ophir Frieder, Jack Grimes, Michael McKeon, Robert. H. Tomlinson, Jr., and Kenneth Nahan.

5.    The term "patents in suit" refers to U.S. Patent No. 5,845,265, U. S. Patent 6,085,176, and U.S. Patent 6,202,051.

6.    The "protective order" refers to the protective order entered on March 8, 2002 in the case of MercExchange, L.L.C. v. eBay Inc. and Half.com, Inc., including, without limitation, the protective order as modified by Judge Friedman in his December 18, 2006 Order.

7.    The term "prior art" refers to any printed publication, article, periodical, book, paper, poster, slide, video, film, overhead, e-mail, document, and thing, in whole or in part, relevant to the patentability of any of the claims of the patents in suit, including, but not limited to, any events, acts, or conditions of patentability in 35 U.S.C. §§ 102 and 103.

8.    "Fish & Richardson" refers to Fish & Richardson and any attorney or employees associated with the firm.

9.    The term "person" means any natural person and any other cognizable entity, including (without limitation) corporations, proprietorships, partnerships, joint ventures, consortiums, clubs, associations, foundations, governmental agencies or instrumentalities, societies, and orders.

10.    The term "communication" means any transmission of information from one person to another by any means.

11.    The phrases "relate to," "relating to," or "relates to" shall be construed to mean evidencing, constituting, referring to, comprising, illustrating, recording, memorializing, supporting, or discussing.

12.    "Document" is used in the comprehensive sense set forth in Federal Rule of Civil Procedure 34(a) and refers to any document either dated after August 6, 2003 or related to developments or events occurring after August 6, 2003.

13.    If you withhold any document because of a claim of privilege, set forth, in writing, the privilege claimed and the facts on which you rely to support the claimed privilege, and furnish a list identifying each document for which privilege is claimed, together with the following information as to each such document:  a brief description of its nature and subject matter, including the title and type of document; its date; the name and title of the author(s); the

2

name and title of the person(s) to whom the document is addressed including all persons who received copies; the name and title of the person(s) to whom the document was sent; the number of pages; and the request to which the document is otherwise responsive.

3

## II.    DOCUMENT REQUESTS

**REQUEST NO. 1**

All documents relating to communications with the reexamination experts from March 8, 2004 to the present.

**REQUEST NO. 2**

All documents relating to any reexamination expert report or declaration drafted from March 8, 2004 to the present.

**REQUEST NO. 3**

All documents relating to any communications with MercExchange or any reexamination expert regarding the protective order.

**REQUEST NO. 4**

All documents relating to the expert declarations filed with the Patent Office during the reexaminations of the patents in suit (from March 8, 2004 to the present), including, but not limited to, materials used to draft the expert declarations, notes, and drafts.

**REQUEST NO. 5**

All documents relating to communications with the Patent Office from March 8, 2004 to the present.

**REQUEST NO. 6**

All documents relating to materials filed with the Patent Office or received from the Patent Office since August 6, 2003 that do not appear in the public file wrappers of the patents in suit.

4

**REQUEST NO. 7**

All documents relating to information or materials that either Fish & Richardson or the reexamination experts had access to during the prosecution of the reexaminations of the patents in suit (from March 8, 2004 to the present), which were designated by eBay as "Confidential/Attorneys' Eyes Only" under the protective order.

**REQUEST NO. 8**

Complete file histories for U.S. Patent Application Nos. 09/203,286; 09/253,014; 09/670,562; and 09/557,617.

**REQUEST NO. 9**

All documents relating to any prior art addressed by MercExchange in any of its responses to Office Actions issued by the Patent Office in the reexaminations of the patents in suit (from March 8, 2003 to the present), including, but not limited to, analyses, memoranda, and claim charts.

**REQUEST NO. 10**

All documents relating to uBid or Altitude Capital.

# EXHIBIT 3

# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

### 525 UNIVERSITY AVENUE

### PALO ALTO, CALIFORNIA 94301

TEL: (650) 470-4500
FAX: (650) 470-4570
www.skadden.com

DIRECT DIAL
650-470-4500
DIRECT FAX
650-470-4570
EMAIL ADDRESS
BANKENBR@SKADDEN.COM

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
——
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

January 26, 2007

**VIA FACSIMILE**

John J. Steele, Esq.
Fish & Richardson P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063-1526

　　　　RE:　　*MercExchange, L.L.C. v. eBay Inc., et al., Case No: 2:01-CV-736*

Dear Mr. Steele:

I am in receipt of your letter dated January 16, 2007, which stated Fish & Richardson's objections to the subpoena duces tecum we served on the firm in connection with the above-referenced matter. As I requested by voicemail earlier today, please contact me at your earliest convenience to meet and confer regarding Fish & Richardson's objections and responses to the subpoena. In view of the brief discovery period permitted by the Court in this matter, I would appreciate a call at 303-483-1120 no later than Monday, January 29, to meet and confer.

In the meantime, please also take note that we decline your suggestion to "produce a copy of the client files to the current litigation counsel so that they and the subpoenaing attorneys may meet and confer about privilege and production issues." It is Fish & Richardson's obligation to comply with the subpoena by producing responsive documents and, unless your firm is represented by Hunton & Williams concerning the subpoena, it would be improper to delegate the obligation as you propose.

Finally, we note the objection concerning service of the subpoena in item 1 of your January 16 letter. To facilitate a meet-and-confer on that point, I have enclosed a copy of the proof of service. I look forward to hearing from you on Monday.

　　　　　　　　　　　　Very truly yours,

　　　　　　　　　　　　[Dictated But Not Read]

　　　　　　　　　　　　Brian J. Ankenbrandt

Attachment

| Attorney or Party without Attorney | | | | For Court Use Only |
|---|---|---|---|---|
| JEFF RANDALL<br>SKADDEN, ARPS, SLATE, MEAGHER & FLOM<br>1440 NEW YORK AVE, N.W.<br>WASHINGTON, DC 20005<br>Telephone No: 202-371-7000 | | | | |
| | | Ref. No. or File No.: | | |
| Attorney for: Defendant | | | | |
| Insert name of Court, and Judicial District and Branch Court: | | | | |
| United States District Court Southern District Of California | | | | |
| Plaintiff: MERCKXCHANGE L.L.C. | | | | |
| Defendant: EBAY INC., ET.AL. | | | | |

| PROOF OF SERVICE<br>SUBPOENA - CIVIL CASE | Hearing Date:<br>Wed, Jan. 24, 2007 | Time:<br>10:00AM | Dept/Div: | Case Number:<br>2:01-CV-736 |
|---|---|---|---|---|

1. *At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the SUBPOENA IN A CIVIL CASE

3. a. *Party served:*        **FISH & RICHARDSON**
       b. *Person served:*      **CHRISTINA BABB, AUTHORIZED TO ACCEPT**

4. *Address where the party was served:*    **12390 EL CAMINO REAL**
                                          **SAN DIEGO, CA 92130**

5. I served the party:
   a. by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party on: Fri., Jan. 12, 2007 at 12:29PM, to the person(s) indicated below in the manner as provided in 1011 CCP.
                                          CHRISTINA BABB, AUTHORIZED TO ACCEPT

   (1) (Business)  I informed him or her of the general nature of the papers.
   b. *I received this subpoena for service on:*      Friday, January 12, 2007

6. *Witness fees were not demanded or paid.*

7. *Person Who Served Papers:*                                      *Recoverable Cost Per CCP 1033.5(a)(4)(B)*
       a. PATRICK SIMPSON                       d. *The Fee for Service was:*

                                                   e. I am: Not a Registered California Process Server

   **First Legal Support Services in**
   ATTORNEY SERVICES
   1111 6TH AVENUE, SUITE 204
   San Diego, CA 92101
   (619) 231-9111, FAX (619) 231-1361

8. *I declare under penalty of perjury under the laws of the State of California and under the laws of the United States Of America that the foregoing is true and correct.*
   Date: Tue, Jan. 16, 2007

   Judicial Council Form                     PROOF OF SERVICE                     (PATRICK SIMPSON)
   Rule 982.9.(a)(b) Rev January 1, 2007       SUBPOENA - CIVIL CASE                 N125394.show-dc.46648

# EXHIBIT 4

01/16/2007 15:38 FAX 6508395071          FISH & RICHARDSON                    002

# FISH & RICHARDSON P.C.

500 Arguello Street
Suite 500
Redwood City, California
94063-1526

Telephone
650 839-5070

**VIA FACSIMILE/FIRST CLASS MAIL**
(650) 470-4570

Facsimile
650 839-5071

Web Site
www.fr.com

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

January 16, 2007

Jeff Randall
Skadden, Arps, Slate, Meagher & Flom, LLP
525 University Avenue, Suite 1100
Palo Alto, CA 94301

ATLANTA

AUSTIN

BOSTON

Re: MercExchange L.L.C. v. eBay Inc. et al.

DALLAS

DELAWARE

Dear Mr. Randall:

NEW YORK

SAN DIEGO

Fish & Richardson P.C. (the "Firm") objects to the Subpoena Duces Tecum you
served on the Firm. Pursuant to Rule 45(c)(2)(B) of the Federal Rules of Civil
Procedure, we enumerate the Firm's objections below.

SILICON VALLEY

TWIN CITIES

WASHINGTON, DC

1.  The Firm objects to the subpoena as not conforming to the
    requirements for service under F.R.C.P. 45(b)(1).

2.  The Firm objects to the time, date, and location for the production of
    information requested in the subpoena. The subpoena is dated for
    January 24, 2007 and the designated place of production is Los
    Angeles, California. The Firm invites you to meet and confer
    regarding an appropriate date and place for production.

3.  The Firm objects to the request attached to the subpoena to the extent
    it seeks production of the Firm's confidential information and/or
    information of third parties to whom the Firm owes a duty of
    confidentiality. The Firm objects to producing any of its confidential
    information until a Protective Order has been entered by the Court
    which adequately protects the Firm's confidential information.

4.  The Firm objects to the request attached to the subpoena as overbroad
    to the extent it requests production of information that is not within the
    scope of relevant discovery under the Federal Rules or Civil Procedure

FISH & RICHARDSON P.C.

Jeff Randall
January 16, 2007
Page 2

and/or information that is not likely to lead to the discovery of
admissible evidence.

5.   The Firm objects to the request attached to the subpoena as unduly
     burdensome to the extent it requests production of information that has
     already been produced in this litigation by one of the parties or
     witnesses, and/or is otherwise already within the possession of your
     client.

6.   The Firm objects to the request attached to the subpoena to the extent
     it seeks production of information protected by the attorney-client
     privilege and/or work product immunity.  Subject to the resolution of
     the foregoing objections, the Firm will provide a log identifying any
     documents being withheld on these bases.  In the meantime, we will
     review our files to determine if we have any material responsive to this
     subpoena.

7.   In the alternative, the Firm will produce a copy of the client files to the
     current litigation counsel so that they and the subpoenaing attorneys
     may meet and confer about privilege and production issues.

Once you've had a chance to review these objections, please feel free to give me a call
if you wish to pursue the matter further.

Very truly yours,

John J. Steele
Special Counsel and Director of Ethics and Conflicts

JJS/dma

50394214.doc

# EXHIBIT 5

# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

### 525 UNIVERSITY AVENUE

### PALO ALTO, CALIFORNIA 94301

DIRECT DIAL
650-470-4580
DIRECT FAX
650-470-4570
EMAIL ADDRESS
JRANDALL@SKADDEN.COM

TEL: (650) 470-4500
FAX: (650) 470-4570
www.skadden.com

FIRM/AFFILIATE OFFICES
————
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
————
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

February 1, 2007

**VIA FACSIMILE**

John J. Steele, Esq.
Fish & Richardson P.C.
500 Arguello Street, Suite 500
Redwood City, CA  94063-1526

RE:    *MercExchange, L.L.C. v. eBay Inc., et al., Case No: 2:01-CV-736*

Dear Mr. Steele:

This letter provides notice pursuant to the Federal Rules of Civil Procedure, Rule 45 that eBay Inc. and Half.com, Inc. will move to compel compliance with the subpoena *duces tecum* served on Fish & Richardson on January 12, 2007.

It has been nearly three weeks since we served the subpoena, more than a week since the compliance deadline, and six days since we wrote to request a meet-and-confer to discuss the subpoena, yet Fish & Richardson has neither produced nor agreed to produce a single document.

We remain willing to meet and confer to discuss Fish & Richardson's full (albeit belated) production of documents in response to the subpoena, but given the brief discovery period and discovery cutoff of March 2, 2007, we have no choice but to move to compel at this time."

Very truly yours,

[Dictated But Not Read]

Jeffrey G. Randall

# EXHIBIT 6

LEXSEE 206 F.R.D. 129

**PAUL F. BARITEAU, PLAINTIFF v. LEONARD W. KRANE, et al., DEFENDANTS**

**CIVIL ACTION NO. 3:00CV-218-S**

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY, LOUISVILLE DIVISION**

*206 F.R.D. 129; 2001 U.S. Dist. LEXIS 11976*

**March 2, 2001, Decided**

**SUBSEQUENT HISTORY:** Related proceeding at *Bariteau v. PNC Fin. Servs. Group, Inc., 2006 U.S. Dist. LEXIS 79564* (W.D. Ky., Oct. 30, 2006)

**DISPOSITION:** [**1] Motion of M-Group International, Inc. to quash the subpoena duces tecum served upon it by the plaintiff, Paul F. Bariteau, on November 20, 2000 DENIED; Motion of the plaintiff, Paul F. Bariteau, for an order holding M-Group International, Inc. in contempt of this court DENIED WITHOUT PREJUDICE; and Motion of the plaintiff, Paul F. Bariteau, to strike the reply brief filed by M-Group International, Inc. DENIED as moot.

**COUNSEL:** For PAUL BARITEAU, plaintiff: J. Gregory Troutman, Morris, Garlove, Waterman & Johnson, Louisville, KY.

For PAUL BARITEAU, plaintiff: John M. Heaphy, George N. Vurdelja, Vurdelja & Heaphy, Chicago, IL.

For LEONARD W. KRANE, defendant: R. Greg Hovious, Tachau, Maddox, Hovious & Dickens, Louisville, KY.

Leonard W. Krane, defendant, Pro se, Santa Ana, CA.

For PATRICK J. MULVEY, defendant: Marvin L. Coan, David Lee Sage, II, Hummel & Coan, Louisville, KY.

Patrick J. Mulvey, defendant, Pro se, San Diego, CA.

BRUCE SZKLENNIK, defendant, Pro se, Buena Park, CA.

For BERNARD S. SCHERMER, defendant: Mark A. Robinson, James David Ballinger, Wyatt, Tarrant & Combs, Louisville, KY.

For BERNARD S. SCHERMER, defendant: Jack B. Spooner, Wittner, Poger, Spewak, Maylack & Spooner, St. Louis, MO.

For RICHARD WILSON, defendant: John E. Hanley, Valenti, Hanley & Crooks, Louisville, KY.

SUNIE LASKY, defendant, Pro se, Los Angeles, CA.

**JUDGES:** CHARLES R. SIMPSON III, CHIEF JUDGE, UNITED STATES DISTRICT COURT.

**OPINION BY:** CHARLES R. SIMPSON III

**OPINION:**

[*129] **MEMORANDUM OPINION**

This matter is before the court for consideration of the motion of M-Group International, Inc. ("M-Group") to quash the subpoena *duces tecum* served upon it by the plaintiff, Paul F. Bariteau ("Bariteau") pursuant [*130] to *Fed. R. Civ. P. 45(c)(3)(A)* on November 20, 2000. In response, Bariteau has moved for an order holding M-Group in contempt of this court for failure to comply with a validly issued subpoena. For the reasons set forth below, both motions will be denied.

**BACKGROUND**

Page 2

206 F.R.D. 129, *130; 2001 U.S. Dist. LEXIS 11976, **1

This discovery dispute arises out of litigation between the plaintiff, Bariteau, and several individuals and entities allegedly involved in defrauding Bariteau [**2] of some $ 20,000,000. Bariteau alleges that between April of 1998 and October of 1999, he paid roughly $ 20,000,000 in exchange for an ownership interest in the Military Channel, Inc. Believing that he had been defrauded, Bariteau retained M-Group in an attempt to recover the funds he invested. M-Group holds itself out as "an international collection business" with the "ability to investigate and locate debtors and assets to be collected." M-Group's Reply (DN 47) at 9. On April 20, 2000, John Lally, retained by M-Group and acting as Bariteau's attorney, filed a complaint verified by Bariteau alleging that several defendants variously participated in a scheme, the object of which was to "bilk" Bariteau out of roughly $ 20,000,000. Essentially, Bariteau's complaint stated that the money paid by Bariteau to Military Channel, Inc. was in fact channeled to individuals and to other business entities created by those individuals solely for that purpose.

While M-Group is not a party to the present suit, Bariteau has separately filed suit against M-Group in Jefferson Circuit Court alleging various claims arising out of the agreement entered into by Bariteau and M-Group. The relief sought by [**3] Bariteau in the state court action includes the cash retainer allegedly paid to M-Group as well as "files, records, etc. pertaining to Bariteau's matters . . .." M-Group Mem. in Supp., Ex. 1 at 9.

In the present action, Bariteau served M-Group with a subpoena *duces tecum* on November 20, 2000. This subpoena sought the production of documents relating to various individuals and entities relevant to his claims against the defendants in this case. This discovery request covers many of the documents sought to be recovered by Bariteau in his state court litigation with M-Group. M-Group seeks to avoid producing these documents under *Fed. R. Civ. P. 45* ("Rule 45") on two grounds. First, M-Group argues that considerations of judicial economy and comity justify our refusal to enforce the subpoena. Second, M-Group claims that its compliance with the subpoena would subject it to an undue burden and that, therefore, the subpoena should be quashed pursuant to Rule 45 (c)(3)(A)(iv). Arguing that M-Group has disobeyed a validly issued subpoena without "adequate excuse," Bariteau requests that we find M-Group in contempt of this court pursuant to Rule

45(e).

## DISCUSSION

### I. M-Group's Motion [**4] to Quash

Faced with a Rule 45 motion to quash a subpoena *duces tecum*, a party seeking the production of documents must make a showing of good cause to justify a need for the production of those documents sought. *See, e.g., Jack Loeks Enterprises, Inc. v. W.S. Butterfield Theatres, Inc., 20 F.R.D. 303, 307 (E.D. Mich. 1957).* If the documents sought by the subpoena are "relevant and are sought for good cause," then the subpoena should be enforced "unless the documents are privileged or the subpoenas are unreasonable, oppressive, annoying, or embarrassing." *Covey Oil Co. v. Continental Oil Co., 340 F.2d 993, 997 (10th Cir. 1965).*

Here, the documents sought by Bariteau relate directly to the claims made by the parties to this litigation. First, the documents may be relevant to the pending motion for sanctions by Beyond Entertainment, Inc., a defendant in this matter, against Bariteau and his former counsel, John Lally. At the heart of Beyond Entertainment's motion is the extent to which Lally investigated Bariteau's claims prior to filing a complaint on his behalf. Because M-Group retained John Lally on behalf of Bariteau, its files and documents [**5] relating to this investigation may indicate the extent to which Lally and M-Group conducted an investigation prior to filing the complaint. If so, they will be instrumental [*131] to Bariteau's defense and will assist this court in its determination.

Second, we find that the materials sought by the subpoena *duces tecum* from M-Group are relevant n1 to the claims contained in Bariteau's Complaint. Bariteau claims that several individuals and entities "bilked" several million dollars from him. Bariteau engaged M-Group to assist in recovering this money. It is logical to conclude that documents produced as a result of an investigation undertaken by M-Group may be relevant to the claims alleged by Bariteau against the defendants in this matter. Therefore, we find that Bariteau has made a showing of good cause to justify the production of the documents listed in the subpoena *duces tecum* served upon M-Group on November 20, 2000.

n1 We note that "relevant" documents are

Page 3

206 F.R.D. 129, *131; 2001 U.S. Dist. LEXIS 11976, **5

those that are "reasonably relevant to the ultimate inquiry." *See Ludlow Corp. v. DeSmedt, 249 F. Supp. 496, 502 (S.D.N.Y. 1966).*

[**6]

In addition to finding that the documents sought by the contested subpoena are relevant and that Bariteau has made a showing of good cause to justify their production, we find that neither of M-Group's justifications for failing to comply with the subpoena are persuasive. First, considerations of judicial economy and comity do not counsel in favor of our refusing to enforce this subpoena *duces tecum*. The *Younger* abstention doctrine, cited by M-Group as support for its argument that the subpoena should be quashed, is inapplicable to this situation. Under *Younger*, a federal district court may decline to exercise subject matter jurisdiction over a claim which is the subject of a parallel state proceeding. *See Younger v. Harris, 401 U.S. 37, 43-44, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971).* Because Bariteau has asserted no claims against M-Group before this court, the *Younger* abstention doctrine does not apply to this matter.

Second, we do not believe that enforcing this subpoena *duces tecum* subjects M-Group to any undue burden. In fact, M-Group merely asserts that compliance with the subpoena will be unduly burdensome but fails to state grounds supporting [**7] its conclusion. Such conclusory statements, in the absence of supporting evidence, do not warrant the refusal to enforce a validly issued subpoena. *See Long Beach Federal Sav. and Loan Ass'n v. Federal Home Loan Bank Bd., 189 F. Supp. 589, 604 (S.D. Cal. 1960).*

Finally, M-Group contends in its reply brief that many of the documents referred to in Bariteau's subpoena *duces tecum* are "confidential and in many cases privileged" and that M-Group "has a common law possessory lien on these documents . . . ." M-Group Reply (DN 47) at 9. Because these issues were raised for the first time in M-Group's reply brief, Bariteau has not had the opportunity to address them, and therefore, they are not properly before us. *See Wright v. Holbrook, 794 F.2d 1152, 1156 (6th Cir. 1986).*

### II. Bariteau's Motion to Hold M-Group in Contempt

*Fed. R. Civ. P. 45(e)* ("Rule 45(e)") provides that the "failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued." As discussed in a separately entered memorandum opinion, M-Group's justifications for failing to comply with the [**8] the validly issued subpoena *duces tecum* at issue are insufficient to support an order quashing or modifying that subpoena. We now separately consider Bariteau's motion to hold M-Group in contempt for their failure to comply with a validly issued subpoena *duces tecum*.

What constitutes an "adequate excuse" within the meaning of Rule 45(e) is not clear from the rule's language. Commentary which accompanies the rule states that "the issue must always turn on the facts of the particular case . . . ." David Siegal, Practice Commentary, *Fed. R. Civ. P. 45* at 395 (West 1992). Courts have often found a person in contempt for refusing to comply with a validly issued subpoena without objecting to it or making a motion to quash. *See, e.g., Mattie T. v. Johnston, 74 F.R.D. 498, 500 (N.D. Miss. 1976).* Indeed, the prevailing view is that a timely objection to a subpoena *duces tecum* is itself an "adequate excuse," precluding a finding of contempt for failure to obey the subpoena. *See Flatow v. The Islamic Republic of Iran, 196 F.R.D. 203, 208 (D.D.C.* [*132] *2000); Pennwalt Corp. v. Durand-Wayland, Inc., 708 F.2d 492, 494 (9th Cir.1983).*

Given [**9] that the order entered consonant with this memorandum opinion denies the motion to quash filed by M-Group and compels it to comply with the subpoena at issue, we will, at this time, deny Bariteau's motion for an order holding M-Group in contempt. However, should M-Group fail to comply with the attached order, Bariteau may renew his motion to hold M-Group in contempt of this court.

### CONCLUSION

For these reasons, M-Group's motion to quash the subpoena *duces tecum* served upon it by Bariteau will be denied, and Bariteau's motion to for an order finding M-Group in contempt of this court will be denied without prejudice.

This 2 day of March, 2001.

CHARLES R. SIMPSON III, CHIEF JUDGE

UNITED STATES DISTRICT COURT

### ORDER

206 F.R.D. 129, *132; 2001 U.S. Dist. LEXIS 11976, **9

Motion having been made, and the court being otherwise sufficiently advised, and for the reasons set forth in the accompanying memorandum opinion, **IT IS HEREBY ORDERED AND ADJUDGED** that:

1. The motion of M-Group International, Inc. to quash the subpoena *duces tecum* served upon it by the plaintiff, Paul F. Bariteau, on November 20, 2000 is **DENIED;**

2. M-Group International, Inc. shall immediately comply with the subpoena [**10] *duces tecum* served upon Robert C. Hughes, an agent of M-Group, International, Inc., by the plaintiff, Paul F. Bariteau, on November 20, 2000;

3. The motion of the plaintiff, Paul F. Bariteau, for an order holding M-Group International, Inc. in contempt of this court is **DENIED WITHOUT PREJUDICE;** and

4. The motion of the plaintiff, Paul F. Bariteau, to strike the reply brief filed by M-Group International, Inc. is **DENIED** as moot.

This 2 day of March, 2001.

CHARLES R. SIMPSON III, CHIEF JUDGE

UNITED STATES DISTRICT COURT

# EXHIBIT 7

Page 1

LEXSEE 2002 U.S. DIST. LEXIS 1914

**GIA L. GARRETT, Plaintiff, v. SPRINT PCS, Defendant.**

**No. 00-2583-KHV**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS**

*2002 U.S. Dist. LEXIS 1914; 88 Fair Empl. Prac. Cas. (BNA) 497*

**January 31, 2002, Decided**

**DISPOSITION:** [*1] Defendant's Motion to Compel granted in part and denied in part.

**COUNSEL:** For GIA LEANE GARRETT, plaintiff: Martin M. Meyers, Stephen C. Thornberry, The Meyers Law Firm, LC, Kansas City, MO.

For SPRINT SPECTRUM, L.P., defendant: Michael L. Matula, Armstrong Teasdale LLP, Kansas City, MO.

For SPRINT SPECTRUM, L.P., defendant: Jennifer Arendes, Armstrong Teasdale LLP, St. Louis, MO.

**JUDGES:** David J. Waxse, United States Magistrate Judge.

**OPINION BY:** David J. Waxse

**OPINION:**

**ORDER**

Pending before the Court is Defendant's Motion to Compel or in the Alternative to Strike (doc. 40). Upon consideration of the arguments of counsel, Defendant's Motion is granted in part and denied in part as specifically set forth below:

**Relevant Factual Background**

This is a religious discrimination case. Plaintiff was employed by Top Resources, a temporary staffing agency. Through this temporary staffing agency, Plaintiff was assigned to work at Sprint PCS in November 1999 and her assignment was terminated by Sprint PCS in June 2000. n1 Plaintiff brings this lawsuit claiming she was subjected to discrimination on the grounds of her religion while working at Sprint PCS. In her Complaint, Plaintiff [*2] claims back pay damages in the form of lost salary and compensatory damages for "emotional pain, suffering, mental anguish, inconvenience and loss of enjoyment of life."

n1 Plaintiff alleges that Sprint PCS controlled her employment and was her employer.

During the course of discovery, Defendant sought to discover Plaintiff's employment and medical records from 1995 to present. Plaintiff objects to discovery of these records. Plaintiff objects to producing her medical records on the grounds that her claim for emotional pain, suffering, mental anguish are "garden variety" claims for emotional distress and the request for access to her medical records is overly broad in time and seeks information that is irrelevant and unlikely to lead to the discovery of admissible evidence. Plaintiff objects to producing her employments records on grounds that the request is overly broad in time and seeks information that is irrelevant and unlikely to lead to the discovery of admissible evidence.

**Discussion [*3]**

Prior to December 1, 2000, n2 a request for discovery would be considered relevant if there was "any possibility" that the information sought may be relevant to the subject matter to the action. *Scott v. Leavenworth Unified School Dist. No. 453*, 190 F.R.D.583, 585 (D. Kan. 1999); *Etienne v. Wolverine Tube, Inc., 185 F.R.D.*

2002 U.S. Dist. LEXIS 1914, *3; 88 Fair Empl. Prac. Cas. (BNA) 497

*653, 656 (D. Kan. 1999)*. Thus, a request for discovery would be allowed "unless *it [was] clear* that the information sought [could] have *no possible bearing* on the subject matter of the action." *Scott, 190 F.R.D. at 585* (quoting *Snowden v. Connaught Lab., Inc., 137 F.R.D. 336, 341 (D. Kan. 1991))* (emphasis added by *Scott*).

n2 The post-December, 2000 version of Rule 26 governs this dispute, as the Scheduling Order in this case was issued after December 1, 2000. The conclusions reached by the Court here, however, would be the same regardless of whether the Court utilized the "old version" of Rule 26(b)(1), which defined the scope of discovery broadly to include any matter, not privileged, that was relevant to the "subject matter" of the litigation, or the "new version" of Rule 26(b) (1), which defines the scope more narrowly as unprivileged facts relevant to the claims and defenses raised in the litigation.

[*4]

Given the scope of relevancy has been narrowed from "subject matter of the action" to "claim or defense of any party" by the recent amendments to Rule 26, and based on the relevant case law in this jurisdiction regarding relevancy; *supra*, it appears logical to conclude that a request for discovery will be considered relevant under the amended rule if there is "any possibility" that the information sought may be relevant to the claim or defense of any party. *See Scott, 190 F.R.D. at 585; Etienne, 185 F.R.D. at 656*. Thus, under the amended rule, a request for discovery should be allowed unless it is clear that the information sought can have no possible bearing on the claim or defense of any party. *See id.* n3

n3 It is a well-established rule of law that discovery in discrimination cases should not be narrowly circumscribed. *Rich v. Martin Marietta Corp., 522 F.2d 333, 343-44 (10th Cir. 1975)*. The scope of discovery is particularly broad in discrimination cases. *Gomez v. Martin Marietta Corp., 50 F.3d 1511, 1520 (10th Cir. 1995)* (citing *Scales v. J.C. Bradford & Co., 925 F.2d 901, 906 (6th Cir. 1991))*.

[*5]

When the discovery sought appears relevant as defined by the amended rule, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under amended *Fed. R. Civ. P. 26(b)(1)*, or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure. *Scott, 190 F.R.D. at 585* (citations omitted). Similarly, a party resisting discovery on the grounds that a request is overly broad has the burden to support its objection, unless the request is overly broad on its face. *Etienne v. Wolverine Tube, Inc., 185 F.R.D. at 656; Hilt v. SFC Inc., 170 F.R.D. 182, 186 (D. Kan. 1997)*.

### . Medical Records and Medical Information

Plaintiff is seeking damages for mental anguish. The medical and psychological information sought by these interrogatories and requests for production are relevant as to both causation and the extent of Plaintiff's alleged injuries and damages. *See Hilt v. SFC, Inc., 170 F.R.D. 182, 186 (D. Kan. 1997)* [*6] (overruling objections to interrogatory asking sexual harassment plaintiff who claimed damages for mental and emotional pain to identify all physicians and health care professionals who had treated her or with whom she had consulted). n4

n4 The cases cited in Plaintiff's Opposition Brief - *Chaparro v. IBP, Inc., 1994 U.S. Dist. LEXIS 18438, 1994 WL 714369 (D. Kan. Dec. 7, 1994)* and *Thiessen v. General Electric Capital Corp., 178 F.R.D. 568 (D. Kan. 1998)* - are not controlling as they were decided in the context of requests to compel a Rule 35 examination as opposed to here where Defendant is simply requesting medical records and information.

The fact that Plaintiff is not planning to present any expert testimony in support of her emotional distress claim does not make this information any less relevant. Moreover, no case law supports Plaintiff's contention that this information is discoverable only if she were planning to present expert testimony regarding her mental and

2002 U.S. Dist. LEXIS 1914, *6; 88 Fair Empl. Prac. Cas. (BNA) 497

emotional condition.

With [*7] regard to Plaintiff's claim that the request in overly broad with respect to temporal scope, employment discrimination cases have held that discovery of information both before and after the liability period may be relevant and/or reasonably calculated to lead to the discovery of admissible evidence and courts commonly extend the scope of discovery to a reasonable number of years both prior to and following such period. *See, e.g., James v. Newspaper Agency Corp., 591 F.2d 579 (10th Cir. 1979)* (four years prior to liability period reasonable); *Raddatz v. Standard Register Co., 177 F.R.D. 446, 448 (D. Minn. 1997)* (allowing discovery into the period two years after termination); *Lyoch v. Anheuser-Busch Co., 164 F.R.D. 62, 67 (E.D. Mo. 1995)* (four years prior to liability period reasonable); *Hicks v. Arthur, 159 F.R.D. 468, 471 (E.D. Pa. 1995)* (allowing discovery to extend to the period two years after the tenure of the plaintiffs); *Robbins v. Camden City Board of Educ., 105 F.R.D. 49, 62-63 (D.N.J. 1985)* (allowing discovery for a period of two years after employment terminated); *McClain v. Mack Trucks, Inc., 85 F.R.D. 53 62 (E.D. Pa 1979)* [*8] (five years prior to liability period reasonable); *Cormier v. PPG Indus., 452 F. Supp. 594 (W.D. La. 1978)* (five years prior to liability period reasonable); *Stevenson v. General Electric Co., 1978 U.S. Dist. LEXIS 15133, No. C-1-77-122, 1978 WL 150,* at *1 (S.D. Ohio Oct. 4, 1978) (noting emergence of a "five-year rule"); *Milner v. Nat'l Sch. of Health Tech., 73 F.R.D. 628, 632 (E.D. Pa. 1977)* (approximately five years prior to alleged violation).

Keeping in mind that the scope, including the temporal scope, of discovery through interrogatories and requests for production of documents is particularly broad in discrimination cases, the Court is convinced that limiting the scope of Defendant's requests for medical information and records to a period of three years prior to the time the discriminatory conduct was alleged to have occurred to the present is reasonable and not overly broad.

Accordingly, Plaintiff will be required to respond to Interrogatory 6 and Request 18 from November 1996 to present.

. Employment Records

Plaintiff seeks lost wages in connection with her claim of discrimination and calculates the extent of her damages based on [*9] a salary she would have earned had she

been hired on by Sprint PCS as a permanent employee. She, therefore, has placed her past employment experiences at issue as this information is necessary to determine whether she was appropriately qualified to be hired on as a permanent full-time employee. Moreover, Plaintiff asserts she does not believe any communications regarding religion made by her in the workplace at Sprint PCS were offensive. Defendant seeks prior employment records to determine whether she engaged in the same type of religious communication with previous employers and had been told that such conduct was unwelcome and/or offensive.

Based on these reasons, the Court finds the information and documentation requested with regard to former employment is relevant and/or reasonably likely to lead to the discovery of admissible evidence. With that said, the Court finds the time period requested is overly broad and will limit the scope of Defendant's requests for employment information and records to a period of three years prior to the time the discriminatory conduct was alleged to have occurred to the present.

Accordingly, Plaintiff will be required to respond to Interrogatory [*10] 3 and Request 23 from November 1996 to present.

Sanctions

Defendant seeks to recover fees and expenses incurred in connection with this motion to compel. **Fed. R. Civ. P. 37(a)(4)(C)** provides that "the court may . . . apportion reasonable expenses incurred in relation to the motion among the parties and persons in a just manner." Upon review of the circumstances presented here, justice requires that each party be responsible for their own costs and expenses incurred.Conclusion

Defendant's Motion to Compel is granted in part and denied in part as specifically set forth above.

IT IS SO ORDERED.

Dated in Kansas City, Kansas on this 31st day of January, 2002.

David J. Waxse

United States Magistrate Judge

# EXHIBIT 8

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division



MERCEXCHANGE, L.L.C.,

      Plaintiff,

v.                                                          Civil Action No. 2:01-CV-736

eBAY INC., HALF.COM, INC., and
RETURNBUY, INC.,

    Defendants.

### [PROPOSED] STIPULATED PROTECTIVE ORDER

To expedite the flow of discovery material, facilitate the prompt resolution of disputes over confidentiality, and to protect information of a kind whose confidentiality is properly protected under Rule 26(c) of the Federal Rules of Civil Procedure, pursuant to the Court's authority under Rule 26(c), and with the consent of the parties, IT IS HEREBY ORDERED:

1.  **APPLICABILITY OF THIS PROTECTIVE ORDER.**

This protective Order ("Order") shall govern the production of all information, documents and things, which are subject to disclosure in discovery or submitted to the Court in this action, that a party or non-party has in its possession, custody or control. Information, documents and things designated under this Order shall be used solely for purposes related to the subject matter of this litigation and not for any other purpose. This Order applies with equal force to all information, documents and things derived from such information, documents and things designated under this Order, including but not limited to, copies, summaries, and abstracts of the designated material.

2.    **DESIGNATION OF MATERIAL.**

a.    Any party or non-party that produces or provides protected material or information, documents or things in this litigation may designate such material as either "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEY'S EYES ONLY" by labeling or marking that material or information in the manner described below in paragraphs 6 and 8. Such a designation of information, documents or things shall constitute a representation that the party or non-party, in good faith, believes that the designation is appropriate and that the material is entitled to the protection provided herein.

b.    The "CONFIDENTIAL - ATTORNEY'S EYES ONLY" provision in this Order shall apply to information, documents or things produced or provided by a party in discovery or submitted to the Court in this action that a party or non-party has in its possession, custody or control, which information, documents or things contain the designating party's or non-party's non-public research, development, commercial or financial information, including without limitation testimony at depositions upon oral examination or upon written questions, answers to interrogatories, documents or things produced, information obtained from inspection of premises or things, and responses to requests for admissions. A designation of "CONFIDENTIAL - ATTORNEY'S EYES ONLY" shall be used only with certain limited materials that contain non-public highly sensitive or confidential trade secrets or other highly sensitive research, development, commercial or financial information of the designating party. A designation of "CONFIDENTIAL" shall be used for the purpose of protecting other non-public information of the designating party.

3.    **NON-DISCLOSURE AND NON-USE.**

No information, documents or things designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEY'S EYES ONLY" may be disclosed to any person except with the prior written consent of the party or non-party originally designating the information, documents or things, or except as hereinafter provided in this Order. Nothing contained in this Order shall affect the right of the producing party to disclose or use for any purpose the information, documents or things produced and/or designated by it as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEY'S EYES ONLY."

4.    **PERMISSIBLE DISCLOSURE OF CONFIDENTIAL MATERIAL.**

"CONFIDENTIAL" material may be disclosed only to the following persons, unless this Court rules that there may be further disclosure:

a.    Outside counsel of record for the parties to this litigation and employees in each outside counsel's law firms whose functions require access to CONFIDENTIAL material; provided, however, that under no circumstances shall any person who accesses such material participate, during the course of the litigation and for a period of five years following the final resolution of the litigation, in patent application preparation or patent prosecution activities on behalf of any of the parties involved in this litigation; and, in the case of plaintiff MercExchange, LLC, this will also include patent application preparation or patent prosecution activities on behalf of the inventor of the patents in suit, Thomas G. Woolston. Should outside counsel be required to disclose to the U.S. Patent and Trademark Office any CONFIDENTIAL information accessed pursuant to this Order, such counsel shall promptly notify the party or other person that designated the information as CONFIDENTIAL prior to disclosing such information;

3

b.    One party representative to be designated by each of the following entities who has signed an undertaking in the form of Exhibit A to this Order: MercExchange, LLC, Half.com, Inc., ReturnBuy, Inc., and eBay Inc. Any such representative shall not be involved in patent application preparation or patent prosecution activities on behalf of a party. Should any such representative be required to disclose to the U.S. Patent and Trademark Office any CONFIDENTIAL materials accessed pursuant to this Order, such representative shall promptly notify the party or other person that designated the information as CONFIDENTIAL prior to disclosing such information. The parties agree that Thomas G. Woolston cannot be designated as a party representative under this paragraph;

c.    Any person (i) who appears as an author, sender, addressee or other recipient on the face of a document and is not otherwise shown prior to such disclosure not to have received the document, (ii) who has been shown to have already seen the document or the information therein (unless that person has only seen the document or information in violation of this Order), or (iii) who participated in any meeting or communication to which the document refers;

d.    Non-party experts or independent consultants engaged by outside counsel or the parties to assist in this litigation, provided that each non-party expert or independent consultant has signed an undertaking in the form of Exhibit A attached to this Order before receiving discovery materials protected by this Order.  The party proposing to disclose the "CONFIDENTIAL" material to an expert or consultant shall, before disclosing the material to the expert or consultant, submit to counsel for all other parties (1) the expert or consultant's resume, and (2) a description of the relevant employment of the expert or consultant, including a listing of companies and individuals for whom the designated expert or consultant has been employed or consulted with within the preceding five (5) years. Unless any counsel notifies

4

opposing counsel of its objections to any expert or consultant proposed under this paragraph, including the grounds of the objection, within five (5) business days after service of this information, counsel may disclose "CONFIDENTIAL" materials to that person. If any counsel objects to an expert or consultant under this paragraph, the party objecting to the disclosure to the expert or consultant may, by motion noticed within five (5) business days after notice of the objection, ask the Court to decide whether the expert or consultant may receive "CONFIDENTIAL" material. If a motion is filed, the proposed expert or consultant shall not receive any "CONFIDENTIAL" material unless and until the Court orders that such disclosure may be made;

  e.  Any other person to whom the parties stipulate in writing and who signs an undertaking in the form of Exhibit A attached to this Order before receiving discovery materials protected by this Order;

  f.  An officer or employee of the United States District Court for the Eastern District of Virginia who is directly concerned with carrying out this action and any other person designated by the clerk;

  g.  Qualified persons taking testimony involving such designated material and necessary stenographic and clerical personnel employed thereby (including video technicians); and

  h.  Vendors with whom counsel of record for the parties to this litigation have contracted for purely clerical functions, such as the copying of documents or the creation of demonstrative exhibits.

5.    **PERMISSIBLE DISCLOSURE OF "CONDFIDENTIAL - ATTORNEY'S EYES ONLY" MATERIAL.**

"CONFIDENTIAL - ATTORNEY'S EYES ONLY" material may be disclosed only to those qualified persons identified in paragraphs 4(a), 4(c), 4(d), 4(e), 4(f), 4(g) and 4(h).

6.    **METHOD OF DESIGNATION OF DOCUMENTS.**

a.    General:  For purposes of this Order, the term "document" shall have the full meaning ascribed to it in Federal Rule of Civil Procedure 34, whether produced pursuant to the disclosure requirements of the Federal Rules of Civil Procedure, a Court Order, subpoena, by agreement, or otherwise.  Such documents include interrogatory answers, responses to requests for admissions, deposition transcripts and exhibits, pleadings, motions, affidavits, and briefs that quote, summarize, or contain information entitled to protection under this Order.

b.    Documents:  A party or non-party producing information may designate such information under this Order by producing copies of the documents marked with a legend reading "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEY'S EYES ONLY."  Such legends shall be placed upon the first page of each document containing such material and upon each page within such document.

Upon request, documents or things shall be made available for an initial inspection by counsel for the requesting (receiving) party prior to the furnishing party producing copies of selected items.  In such cases, only counsel those persons identified in paragraph 4 shall be permitted access to the documents or things, prior to the designation of those documents or things as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEY'S EYES ONLY" pursuant to the terms of this Order.  Such initial inspection shall not constitute a waiver of confidentiality with respect to any documents or things so inspected.  Information so inspected shall be maintained as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEY'S EYES ONLY" until

6

the documents are designated by the producing party, at which time the new designation shall govern.

     c.     **Magnetic Media Documents:**  Where information is produced in a magnetic medium (such as a floppy diskette or tape), the cartridge, reel, or medium container shall be marked with the appropriate notice.  Where such physical notice is impracticable, the notice required by this Order may be provided in writing simultaneous with, or prior to, the production of the electronically-stored information.

     d.     **Physical Exhibits:**  The confidential status of a physical exhibit shall be indicated by placing a label on said physical exhibit marked with the appropriate notice.

     e.     **Third Party Materials:**  Any third party from which materials are sought in connection with this action shall be provided with a copy of this Order and notified of the opportunity to designate materials under it.  Thereafter, material furnished by a third party will be:

     i.     Treated as "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEY'S EYES ONLY" for a period of ten (10) business days from the date of production;

     ii.     At any time before the tenth business day following the date of production, any party to this litigation may specifically designate third party material as it deems appropriate pursuant to this Order.  A party who designates third party material must promptly notify in writing all other parties to this litigation of such designation and must include a copy of the third party material, properly marked with such notification.  Once such third party material has been specifically designated as "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEY'S EYES ONLY" pursuant to this paragraph, the remaining provisions of this Order respecting confidential material shall apply;

iii.    If third party material has not been specifically designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEY'S EYES ONLY" by the third party, or by a party within the ten day period, the third party material will lose its temporary "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEY'S EYES ONLY" designation and will have no designation.

**7.    CANCELLATION OF DESIGNATION.**

A receiving party may request the designating party to redesignate "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEY'S EYES ONLY" material.    Such request shall be by written notice to counsel for the designating party.    The written notice shall particularly identify the subject matter or document designated "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEY'S EYES ONLY" that the receiving party seeks to have redesignated.    The parties shall work together in good faith to resolve all redesignation requests on an informal basis.    If the dispute cannot be resolved informally within five (5) business days, a motion for further disclosure or reclassification may be filed with the Court.    Pending the Court's determination of any motion contesting a confidential designation, the material shall be deemed "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEY'S EYES ONLY" as indicated by the designating party.    Thereafter, the material shall be treated in accordance with the Court's Order.

**8.    HANDLING MAGNETIC MEDIA.**

If a party produces a magnetic version of any information, and such information is designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEY'S EYES ONLY," it should be produced according to the following procedures with regard to the protection of that magnetic media:

8

     a.     No copy of the original magnetic media produced ("Original Media") shall be made except as provided in subparagraphs (b) and (c) below (a "copy" would include copying or transferring all, or part, of the magnetic data to another media, such as a diskette or hard disk, except for placement on a server where access to the copy is limited to persons authorized under this Order, or for backups made for disaster recovery purposes);

     b.     Two hard copies of the Original Media may be made. Those hard copies must be marked with the same confidentiality legend as the Original Media in accordance with paragraph 6 of this Order. Additional copies may be made only as necessary for use at depositions, hearings, court filings or trial in accordance with the provisions of this Order;

     c.     Each party must maintain an internal log of any person who handled the Original Media or receives a magnetic copy of the information contained on the Original Media ("Internal Log");

     d.     Within sixty (60) days of the conclusion of the litigation:

     i.     The Original Media must be returned to the producing party; and

     ii.     Each person whose name appears on the Internal Log and counsel must sign a declaration that shall be produced to the producing party certifying that:

     (a)     to the best of that person's knowledge, the Original Media has been returned to the producing party; and

     (b)     every copy, whether whole or partial, of the Original Media has been deleted in its entirety, including the use of a disk utility program, such as Norton Utilities or its equivalent, to rewrite the free disk space so that deleted files may not be recovered.

9

9.    **CONFIDENTIAL INFORMATION IN DEPOSITIONS.**

a.    A deponent may be shown during a deposition, and examined about, documents and information designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEY'S EYES ONLY" under this Order if the deponent already knows the protected information contained therein, is identified as an author, sender or addressee on the document, or is or has been employed by a party who knows that information, or is an outside expert or consultant and counsel has, if necessary, complied with paragraph 4(b).

b.    Deponents shall not retain or copy portions of the transcript of their depositions that contain protected information not provided by them or the entities they represent.

c.    A deponent who is not a party or a representative of a party shall be furnished a copy of this Order at the time of service of the notice of deposition or subpoena pursuant to which the deponent is to appear before being asked to produce potentially confidential information.

d.    Parties and deponents may, at any time during the deposition or within ten (10) business days after receipt of the hard copy transcript, designate portions of the testimony for protection under this Order. This designation period may be shortened for good cause shown, either by stipulation of the parties or by further Order of the Court. Prior to expiration of this designation period, the entire deposition transcript (with the exception of the exhibits to the transcript) which bear a different designation will be treated as "CONFIDENTIAL -- ATTORNEY'S EYES ONLY." Exhibits to the deposition transcript will be treated in accordance with whatever designation was given those materials, if any, at the time of their production or, if not previously produced, at the time of the deposition. Confidential information within the deposition transcript shall be designated by identifying the pages and lines containing

10

such information as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEY'S EYES ONLY," and by forwarding such designations to the Court Reporter, to counsel for the parties, and to any other person known to have a copy of the transcript.

e.    If no party or deponent timely designates information in a deposition transcript in accordance with this paragraph, then none of the transcript (with the exception of the exhibits) will be protected as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEY'S EYES ONLY" under this Order.  Exhibits to the deposition transcript will be treated in accordance with whatever designation was given those materials, if any, at the time of their production or, if not previously produced, at the time of the deposition.

f.    Nothing in this section shall be construed to prevent a deponent from reviewing the entirety of his deposition transcript for the purpose of making any necessary and permitted corrections of that transcript.

10.    **CLIENT CONSULTATION.**

Nothing in this Order shall restrict any counsel from advising its client with respect to this action; and from relying in a general way upon an examination of material designated pursuant to this Order in giving such advice; provided, however, that in giving such advice and communicating with the client, counsel shall not disclose the contents of any "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEY'S EYES ONLY" material.

11.    **FILING**

Submission of designated material to the Court shall be as follows:

a.    A party who wishes to lodge or file any paper, pleading or exhibit containing designated material shall state on the first page of the pleading containing such material that the pleading contains such material.

11

b.    A party who lodges or files any paper, pleading or exhibit containing designated material shall submit it to the Court in a sealed envelope or other appropriate sealed container that shall bear the caption of this case, an indication of the nature of the contents of the sealed envelope or other container, and a legend as follows:

> RESTRICTED DOCUMENT -- FILED SUBJECT TO COURT ORDER.  THE PAPERS IDENTIFIED ABOVE AND CONTAINED IN THIS ENVELOPE HAVE BEEN DESIGNATED AS CONFIDENTIAL MATERIAL, ARE SUBJECT TO A PROTECTIVE ORDER ISSUED BY THE COURT, AND MAY NOT BE EXAMINED, DISPLAYED, REVEALED, OR COPIED EXCEPT BY THE COURT, OR PURSUANT TO COURT ORDER.

**12.    USE OF "CONFIDENTIAL" MATERIAL AT HEARINGS OR AT TRIAL.**

Subject to the Federal Rules of Evidence, documents and other information designated under this Order may be offered in evidence at trial or any court hearing, provided that the proponent of the evidence gives notice, reasonably sufficient to allow any confidentiality to be preserved, to counsel for the party or other person that designated the information.  Any party may move the Court for an Order that the evidence be received in camera or under such other conditions as are necessary to prevent inappropriate disclosure.  The Court will then determine whether the proffered evidence should continue to be protected under this Order and, if so, what protection, if any, may be afforded to such information at the hearing or at trial.

**13.    SUBPOENA BY OTHER COURTS OR AGENCIES.**

If a third party, another court or an administrative agency subpoenas or Orders production of documents or information designated for protection under this Order which a party has obtained under the terms of this Order, such party shall promptly notify the party or other person that designated the information of the pendency of such subpoena or Order.

12

14. **NO ADMISSIONS.**

   a.    The designation of and/or acceptance of information, documents or things marked as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEY'S EYES ONLY" materials by any party or non-party shall not constitute an admission or concession that any such designation is appropriate.

   b.    Any party challenging a designation of material as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEY'S EYES ONLY" may move this Court for an Order, as specified in paragraph 7 above, that the designated information, documents or things shall not be protected.  If such a motion is made, nothing in this Order shall alter any burden of proof that would otherwise apply in determining whether the information, documents or things are within the scope of Federal Rule of Civil Procedure 26(c)(7).  Any information, documents or things covered by the motion shall be protected until the motion is decided.

15. **INADVERTENT DISCLOSURE OF PRIVILEGED OR CONFIDENTIAL INFORMATION.**

   a.    The inadvertent or unintentional disclosure by the producing party of privileged information or confidential information which it believes should have been designated as "CONFIDENTIAL" or "CONFIDENTIAL - ATTORNEY'S EYES ONLY," regardless of whether the information was so designated at the time of the disclosure, shall not be deemed a waiver in whole or in part of the party's claim of privilege or confidentiality, either as to the specific information disclosed or as to any other information relating thereto or on the same or related subject matter.

   b.    If a party through inadvertence produces or provides discovery of any privileged information or confidential information without labeling, marking or designating it as "CONFIDENTIAL" or "CONFIDENTIAL-ATTORNEY'S EYES ONLY," the producing party

13

must give written notice to the receiving party or parties within twenty (20) business days following such inadvertent production that the information, document, or thing is privileged or "CONFIDENTIAL" or "CONFIDENTIAL-ATTORNEY'S EYES ONLY." If the producing party gives written notice that the information, document, or thing is privileged, counsel for the receiving party will promptly return such inadvertently produced information, and all copies thereof, to counsel for the producing party within three (3) days of written notice of the inadvertent production. If the producing party gives written notice that the information, document, or thing is "CONFIDENTIAL" or "CONFIDENTIAL-ATTORNEY'S EYES ONLY," the receiving party or parties shall treat such information, document, or thing as "CONFIDENTIAL" or "CONFIDENTIAL - ATTORNEY'S EYES ONLY" from the date such notice is received.

      c.    Disclosure of such information, document or thing prior to receipt of such notice shall not be deemed a violation of this Order. However, if prior disclosure of such information, document, or thing was made to anyone not authorized to have access to such material under this Order, those persons to whom disclosure was made must be promptly advised that the material disclosed to them is privileged or "CONFIDENTIAL" or "CONFIDENTIAL - ATTORNEY'S EYES ONLY" and must be treated in accordance with this Order.

**16.**    **EXCEPTIONS.**

    This Order shall not prevent or prejudice any party from applying to the Court for relief from this Order or for further or additional protective Orders, or from agreeing with the other party to a modification of this Order, subject to this Court's approval.

14

**17.    RETURN OF DOCUMENTS AFTER DISPOSITION OF THIS CASE.**

a.    The provisions of this Order shall not terminate at the conclusion of this action. Upon agreement of all counsel of record or within sixty (60) days after this action finally terminates, either because a settlement agreement has been executed or the case is dismissed, the time to appeal expires, or the appellate mandate issues after an appeal, whichever event shall occur first, any party or other individual who has received materials designated under this Order shall either return all "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEY'S EYES ONLY" materials, including all copies, abstracts, summaries, or other documents containing information derived from the designated materials (but excluding any materials, which in the judgment of receiving counsel, are work product materials in counsel's possession, custody, or control), to the producing party, or shall certify that the materials were destroyed; provided, however, that one outside counsel of record for each party may retain one copy of all "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEY'S EYES ONLY" materials, including all court papers, hearing or trial exhibits, and deposition exhibits, solely for reference in the event a dispute arises over the use of information subject to this Order or over compliance with the final judgment or settlement in this action. Termination of this action is defined as being the effective date of a settlement agreement entered into by the parties, or if the case is dismissed or judgment is entered by the Court, the date when the time to appeal expires without an appeal having been filed, the date when an appellate mandate finally disposing of the case issues following an appeal, or the date when no further appeal is available, whichever occurs first.

b.    Contemporaneous with the return of documents or certification of their destruction after the termination of this action, receiving counsel shall also provide, at the

producing party's request, copies of all undertakings in the form of Exhibit A which were signed pursuant to the terms of this Order.

**18.    NOTICE.**

All notices required by this Order are to be served via facsimile with confirmation by regular mail to the appropriate attorney(s) at Hunton & Williams and Cooley Godward LLP. The date by which a party receiving a notice shall respond, or otherwise take action, shall be computed from the date indicating that the facsimile was received. However, any notice transmitted on a Saturday, Sunday, federal holiday or after 5:30 p.m. Eastern Standard Time or Eastern Daylight Time shall be deemed to have been received on the next business day. Any of the notice requirements herein may be waived in whole or in part, but only in writing signed by an attorney for the designating party.

**19.    NO IMPLIED WAIVER.**

This Order shall not be construed as an agreement by any person to supply any document, as a waiver by any person of the right to object to the production of any document, or as a waiver of any claim of privilege with regard to the production of any document.

**20.    CUSTODY OF CONFIDENTIAL INFORMATION.**

a.    Information, documents or things designated as "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEY'S EYES ONLY" shall be maintained at outside counsel's facilities. Information, documents or things designated as "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEY'S EYES ONLY" may also be maintained at an expert's or consultant's facilities if such expert or consultant has been identified and approved pursuant to paragraph 4(d) above.

16

b.    Information, documents or things designated as "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEY'S EYES ONLY" by eBay, Inc., Half.com, Inc., or ReturnBuy, Inc. shall not be electronically or otherwise transmitted, maintained, stored or located at the facilities of MercExchange, L.L.C.  Information, documents or things designated as "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEY'S EYES ONLY" by MercExchange, L.L.C. shall not be electronically or otherwise transmitted, maintained, stored or located at the facilities of eBay Inc., Half.com, Inc., or ReturnBuy, Inc.

c.    The provisions of paragraph 20(b) apply to briefs, affidavits, declarations and expert reports to the extent that they contain "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEY'S EYES ONLY" information.

21.    **MODIFICATION OF ORDER.**

The Court may modify this Order at any time upon a showing of good cause.

Dated: March 4, 2002

HUNTON & WILLIAMS

_(signature)_

Gregory N. Stillman (VSB # 14308)
K. Reed Mayo (VSB # 26601)
Hunton & Williams
Sun Trust Center
500 East Main Street, Suite 1000
Norfolk, VA 23510
(757) 640-5300

Thomas J. Cawley (VSB # 04612)
David M. Young (VSB # 35997)
Hunton & Williams
1751 Pinnacle Drive, Suite 1700
McLean, VA 22102
(703) 714-7400

Scott L. Robertson
Thomas J. Scott, Jr.
Jennifer A. Albert
Emerson V. Briggs, III
Brian M. Buroker (VSB # 39581)
Hunton & Williams
1900 K Street, NW
Washington, DC 20006-1109
(202) 955-1500

Attorneys for Plaintiff

McGUIRE WOODS LLP

_(signature)_

Robert W. McFarland (VSB # 24021)
Steven R. Zahn (VSB # 43332)
McGuireWoods LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, VA 23510-1655
(757) 640-3700

COOLEY GODWARD LLP

_(signature)_

Jeffrey G. Randall
Chuck P. Ebertin
Cooley Godward LLP
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 93306
(650) 843-5000

Allan M. Soobert (VSB # 35817)
Cooley Godward LLP
One Freedom Square
Reston Town Center
11951 Freedom Drive
Reston, VA 20190

(703) 456-8000

Attorneys for Defendants

18

PURSUANT TO STIPULATION, IT IS SO ORDERED.


Dated:  3/8/0r

_____
United States District Judge

19

## EXHIBIT A

I, _____, declare under penalty of perjury under the laws of the United States of America that:

1.    My address is: _____

_____.

2.    My present employer is: _____

_____.

3.    My present occupation or job description is: _____

_____

_____.

I HEREBY CERTIFY AND AGREE that I (a) have read and understood the terms of the protective order ("Order") in the matter of *MercExchange, L.L.C.   v. eBay Inc. et al.*, pending in the United States District Court for the Eastern District of Virginia, Civil Action No. 2:01-CV-736, (b) will not use or disclose to anyone any of the contents of any "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEY'S EYES ONLY" information designated under the Order except for purposes explicitly allowed by the Order, and (c) agree to be bound by the terms and conditions of the Order.

If I have been retained as an independent expert or consultant pursuant to paragraph 4(d) of the Order, I understand that I am to retain all copies of any of the materials that I receive which have been designated under the Order in a container, cabinet, drawer, room or other safe place that limits access to the materials and that all copies are to remain in my custody until I have completed my duties, whereupon the copies are to be returned to outside counsel or destroyed as specified in the Order. I acknowledge that the return or subsequent destruction of such materials shall not relieve me from any of the continuing confidentiality obligations imposed upon me by the Order.

Dated: _____          Signed: _____

20